BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:
ANDROGEL PRODUCTS
LIABILITY LITIGATION

MDL DOCKET NO. 2545

RESPONSE IN SUPPORT OF MOTION FOR TRANSFER AND
COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. § 1407

I.     INTRODUCTION

Plaintiffs, Kenneth Aurecchia, Michael Bailey, Stephen Benn, Marco DeLeon, Michael Gallagher, James Gordon, Stephen Marino, Kenneth Montgomery, Steven Myers, and Gary White are currently parties to lawsuits now pending in the United States District Court for the Northern District of Illinois. *See Aurecchia v. AbbVie Inc., et al.*, 1:14-cv-772 (N.D. Ill.); *Bailey v. AbbVie Inc.*, et al., 1:14-cv-1663 (N.D. Ill.); *Benn v. AbbVie, Inc. et al.*, 1:14-cv-774 (N.D. Ill.); *DeLeon v. AbbVie, Inc. et al.*, 1:14-cv-1673 (N.D. Ill.); *Gallagher v. AbbVie, Inc. et al.*, 1:14-cv-776 (N.D. Ill.); *Gordon v. AbbVie, Inc. et al.*, 1:14-cv-1665 (N.D. Ill.); *Marino v. AbbVie, Inc. et al.*, 1:14-cv-777 (N.D. Ill.); *Montgomery v. AbbVie, Inc. et al.*, 1:14-cv-1668 (N.D. Ill.); *Myers v. AbbVie, Inc. et al.*, 1:14-cv-780 (N.D. Ill); *White v. AbbVie, Inc. et al.*, 1:14-cv-1667 (N.D. Ill.). The Honorable Judge Matthew F. Kennelly is presiding over all of these cases. Each of the Plaintiffs alleges that he suffered personal injuries after ingesting the testosterone replacement therapy drug AndroGel, designed, manufactured, supplied, marketed, promoted and/or sold by Defendants Abbott Laboratories, Inc. and AbbVie Inc. (the "AbbVie Defendants").

Plaintiffs file the instant response in support of motion for transfer, coordination, and consolidation under 28 U.S.C. § 1407 that was filed by William Blades, et al., Gary

1

Carpenter, et al., Robert Cripe, Thomas Dobbs, Roger Gibby, et. al, Michael Gordon, et al., Joseph Hardee, et al., Thomas Headley, Christopher Hughes, et al., Buddy Humphies, et al., William Jackson, et al., Joseph Jones, et al., Mark King, et al., Calvin Lewis, et al., and Robert Saylor et al (the "Illinois Plaintiffs"). *See* [D.E. 1 and 1-1]. The Illinois Plaintiffs' cases are all pending before the United States District Court for the Northern District of Illinois. Plaintiffs are also filing the instant response with respect to the recent motion for transfer and coordination or consolidation under 28 U.S.C. § 1407 that was filed by Plaintiffs Rafael Barrios and his wife Connie Barrios (the "Barrios Plaintiffs"). *See* [D.E. 17 and 17-1]. The Barrios Plaintiffs' case is pending before the United States Court for the Eastern District of Louisiana. Lastly, Plaintiffs are also filing the instant action in response to two other motions to transfer that were each filed by various plaintiffs to proceedings now pending in the United States District Court for the Eastern District Of Pennsylvania, the first of which was filed by Plaintiffs Joseph Albright, Mark S. Harris, Ronald W. Husted, Sr., Walter McGill, and Donna McGill (the "Albright Plaintiffs"), the second of which was filed by Rafael Tejeda and Larry D. Hill (the "Tejeda Plaintiffs"). *See* [D.E. 25; 37]. All of these motions to transfer are pending before this Panel under MDL 2545. *See In Re: Androgel Products Liability Litigation*, MDL 2545.

The arguments raised by these different groups of plaintiffs vary. The Illinois Plaintiffs request that this Panel create an MDL in the Northern District of Illinois with respect to AndroGel. *See* [D.E. 1 and 1-1]. The Barrios Plaintiffs propose that the Panel create an MDL with respect to every testosterone replacement therapy drug on the market and request transfer to the Eastern District of Louisiana. *See* [D.E. 17 and 17-1]. The

Albright Plaintiffs and the Tejeda Plaintiffs' respective motions are duplicative: they join the Barrios Plaintiffs in arguing that this litigation should involve all testosterone replacement therapy drugs and maintain that this litigation should be transferred and consolidated before the Eastern District of Pennsylvania. *See* [D.E. 25; 37].

Plaintiffs join all of these motions insofar as they request transfer and coordination or consolidation pursuant to 28 U.S.C. § 1407. Consolidation and coordination of these proceedings as an MDL is warranted in light of common questions of fact involved in the numerous Related Actions. Such consolidation and coordination will conserve judicial resources, promote efficient management of litigation, and avoid inconsistent pretrial rulings. Plaintiffs also concur with the Illinois Plaintiffs insofar as their motion to transfer requests that the litigation involve only the drug AndroGel and that this litigation should be transferred and consolidated before the United States District Court for the Northern District of Illinois, Eastern Division.

II. **ARGUMENT**

    A. **TRANSFER OF THE ANDROGEL ACTIONS TO ONE COURT FOR CONSOLIDATION OR COORDINATION IS APPROPRIATE UNDER 28 U.S.C. § 1407**

Plaintiffs have reviewed the Illinois Plaintiffs' memorandum of law in support of their motion to transfer and concur with that memorandum of law insofar as it argues that transfer to one court for consolidation is appropriate under 28 U.S.C. § 1407 for the numerous AndroGel cases filed against the AbbVie Defendants across three federal jurisdictions. Plaintiffs adopt and incorporate that analysis herein by reference. Plaintiffs maintain that consolidation and coordination of these proceedings as an MDL is warranted in light of common questions of fact involved in the numerous Related Actions

and that this litigation should be transferred and consolidated before the United States District Court for the Northern District of Illinois, Eastern Division.

### B. THE NORTHERN DISTRICT OF ILLINOIS IS THE MOST APPROPRIATE FORUM FOR TRANSFER AND CONSOLIDATION

In determining the most appropriate transferee forum, the Panel considers, amongst other things, "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, … the experience, skill, and caseloads of available judges" where the first filed case is located, and whether the proposed district provides an accessible location. *See* Manual for Complex Litigation (Fourth) § 20.131 (2005); *In re Educ. Testing Serv. Plt 7-12 Scoring Litig.*, 350 F. Supp. 2d 1363, 1365 (J.P.M.L 2004) (Panel found district appropriate where four of the thirteen action were already pending in the district, the district provided an accessible, metropolitan location, the district had favorable caseload conditions, and the judge had experience managing multi-district litigation); *In re Wheat Farmers Antitrust Action Litig.*, 366 F. Supp. 1087, 1088 (J.P.M.L. 1973) (Panel considered the conveniences of the parties and witnesses, location of relevant documents, stage of pretrial proceedings, and the status of civil dockets). Given these factors, transfer and consolidation militate strongly in favor of the Northern District of Illinois.

### 1. The Northern District of Illinois Already Has The Overwhelming Majority of Testosterone Cases

As of April 21, 2014, sixty testosterone replacement therapy cases have been filed in four federal district courts. Fifty of those cases have been filed in the Northern District of Illinois. Only three cases have been filed in the Eastern District of Louisiana.

4

Similarly, only six cases have been filed in the Eastern District of Pennsylvania. Additionally, one case has been filed in the District of Colorado. What the Barrios Plaintiffs, the Albright Plaintiffs, and the Tejeda Plaintiffs should concede is that together, the district courts to which they believe this litigation should be transferred have less than one-fifth of the current testosterone replacement therapy docket whereas the Northern District of Illinois' caseload makes up the majority of this litigation. Plaintiffs anticipate that these numbers will continue to weigh overwhelmingly in favor of the Northern District of Illinois as will be argued herein. Moreover, the first-filed testosterone replacement therapy cases, *Benn v. AbbVie, Inc. et al.*, and *Gallagher v. Abbvie, Inc. et al.*, were filed in the Northern District of Illinois, nearly two months before the two actions brought in the Eastern District of Louisiana and weeks, if not months before the majority of the actions filed in the Eastern District of Pennsylvania. *See Benn v. AbbVie, Inc. et al.*, 1:14-cv-774 (N.D. Ill.); *Gallagher v. AbbVie, Inc. et al.*, 1:14-cv-776 (N.D. Ill.).  For these reasons, transfer and consolidation militate in favor of the United States District Court for the Northern District of Illinois.

2. **The Northern District of Illinois is the Center of Gravity of the Litigation**

The Panel has often stated its preference for consolidation in the district in which the principal place of business of the defendant is located, as well as witnesses and documents. *See, e.g. In re Allegheny Energy Inc. Sec. Litig.*, 259 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003); *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 930 (J.P.M.L. 1980). The AbbVie Defendants are the primary defendants in this litigation and will continue to be so as this litigation unfolds. The AbbVie Defendants' principal place of business is located in Chicago, Illinois, which is within the Northern District of Illinois.

The Barrios Plaintiffs, the Albright Plaintiffs, and the Tejeda Plaintiffs are quick to point out the existence of other defendants in this litigation, manufacturers of various other testosterone replacement therapy drugs whose principal places of business are located in districts other than the Northern District of Illinois. Plaintiffs concede this fact. Auxilium Pharmaceuticals, Inc., manufacturer of Striant, Testopel, and Testim, is located in Chesterbrook, Pennsylvania, which falls inside the Eastern District of Pennsylvania. Endo Pharmaceuticals, Inc., manufacturer of Fortesta and Delatestryl, is located in Malvern, Pennsylvania which is within the Eastern District of Pennsylvania. Finally, Activis Pharma, Inc. and Eli Lilly and Company, the manufacturers of Androderm and Axiron respectively are located in New Jersey and Indiana. Worth noting is the fact that not a single manufacturer of any testosterone replacement therapy drug's principal place of business is located in or anywhere near the Eastern District of Louisiana.

What the Barrios Plaintiffs, the Albright Plaintiffs, and the Tejeda Plaintiffs should concede is that the actions against these other manufacturers are, for the most part, also against the AbbVie Defendants. In the three cases filed against Auxilium Pharmaceuticals, Inc., one of them is also against the AbbVie Defendants. *See Peuler v. Auxilium Pharmaceuticals, Inc.*, No. 14-658 (E.D. La.); *Barrios v. AbbVie, Inc., et al.*, No. 14-839 (E.D. La.); *Hill v. Auxilium Pharmaceuticals, Inc.*, No. 14-2189 (E.D. Pa.). The only case filed against Endo Pharmaceuticals, Inc. is also against the AbbVie Defendants. *See Cataudella v. AbbVie Inc., et al.*, 1:14-cv-1483 (N.D. Ill.). To date, only one case has been filed against Activis Pharma, Inc. *See McGill, et al., v. Actavis, Inc., et al.,* 2:14-cv-2177 (E.D. Pa.). The two cases that have been filed against Eli Lilly and Company were also filed against the AbbVie Defendants and both currently before the

6

Northern District of Illinois. *See Lau v. AbbVie Inc., et al.,* 1:14-cv-1298 (N.D. Ill.); *Ott v. AbbVie Inc., et al.*, 1:14-cv-2498 (N.D. Ill.).

As of April 21, 2014, *only three* cases out of sixty concerning testosterone replacement therapy drugs do not also involve the AbbVie Defendants; 95% of the cases filed are against the AbbVie Defendants. For this reason, it cannot seriously be argued that the AbbVie Defendants are not the principal defendants in this matter. Transferring and consolidating this litigation to any forum *besides* the United States District Court for the Northern District of Illinois would cause great inconvenience to the parties, in particular the primary defendant, and would therefore be contrary to the very purpose of transfer and consolidation. *See In re Allegheny Energy Inc. Sec. Litig.*, 259 F. Supp. 2d at 1369; *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. at 930.

Plaintiffs anticipate that the AbbVie Defendants will continue to be the primary defendants in this litigation as more cases continue to get filed. Over the last few years, sales of the AbbVie's AndroGel have dwarfed the sales of its competitors' testosterone replacement therapy drugs. In 2013 alone, the AbbVie Defendants had sales of $1.035 billion[1] whereas Auxillium Pharmaceuticals, Inc. had sales of only $211.2 million for Testim[2] and Eli Lilly and Company had sales of only $124 million for Androderm.[3]  As of April 2014, AndroGel has been to date by far the most profitable testosterone replacement therapy drug on the market. These sales figures are supported by prescription data with AndroGel being the most popular testosterone replacement therapy drug on the market. As of September 2013, AndroGel held 64.9% of U.S. transdermal

---

[1] Abbvie, Inc. (2014). 2013 Annual Report on Form 10-K. Retrieved from http://www.abbvieinvestor.com
[2] Auxilium Pharmaceuticals, Inc. (2014). 2013 Annual Report. Retrieved from http://ir.auxilium.com
[3] Acrux Limited (2014). 2013 Annual Report. Retrieved from http://www.acrux.com.au/irm/content/financial-reports1.aspx?RID=306

prescriptions; Axiron held only 14%; Testim held only 13.5%; and Fortesta held 7.6%.[4] Given that millions of men are using these products, it can be assumed that hundreds of thousands of more men have taken AndroGel than any other testosterone replacement therapy drug. As such, Plaintiffs anticipate that many more cases will continue to be filed against the AbbVie Defendants than against any other manufacturer.

The AbbVie Defendants are the primary defendants in this action and, based upon their comparative sales figures and prescription numbers, they will continue to so throughout the course of this litigation. The vast majority of cases that have been filed related to *any* testosterone replacement therapy drug have been against the Abbvie Defendants. For all of these reasons, and because the AbbVie Defendants' principal place of business, as well as their witnesses and documents, are all located in the Northern District of Illinois, the Panel should transfer and consolidate this litigation to the United States District Court for the Northern District of Illinois.

3. **The Northern District of Illinois Has the Capacity and Experience to Handle the Litigation**

An important factor that frequently is considered by this Panel is the experience of a potential transferee forum in managing multidistrict litigations. *See In re Janus Mutual Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L.). As the Panel has recognized on numerous occasions, the Northern District of Illinois has the resources and experience to handle complex litigations such as this. *See In re Stericycle, Inc., Steri-Safe Contract Litigation*; MDL No. 2455; *In re: Capital One TCPA Litig.*, MDL No. 2416; *In re Innovatio IP Ventures, LLC Patent Litigation*, MDL No. 2303; *In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272; *In re: Navistar 6.0L Diesel*

---

[4] Acrux Limited (2014). 2013 Annual Report. Retrieved from http://www.acrux.com.au/irm/content/financial-reports1.aspx?RID=306

*Engine Products Liability Litigation*, MDL No. 2223; *In re: Potash Antitrust Litigation (II)*, MDL No. 1996; *In re Sulfuric Acid Antitrust Litigation*, MDL No. 1536; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350.  Moreover, Judge Kennelly of the Northern District of Illinois before whom all of the AndroGel cases in the Northern District of Illinois have been assigned, has significant experience presiding over multidistrict litigations as he is currently presiding over two other, albeit smaller, MDLs. *See In re Watson Fentanyl Patch Products Liability* Litigation, MDL No. 2372; In *re Text Messaging Antitrust Litigation*, MDL No. 1997.  Finally, the caseload of the Northern District of Illinois supports transfer to this district. Data from the Federal Court Management Statistics reveals that the Northern District of Illinois is well-suited to provide an efficient disposition of these cases. According to judicial statistics for the twelve-month period ending in March 31, 2013, civil cases proceeded to trial in the Northern District of Illinois in 33.7 months. The median time for filing to disposition other than trial for civil cases was only 6.6 months. For these reasons, Both the Northern District of Illinois and Judge Kennelly have the necessary resources, skill, and experience to devote the substantial amount of time and effort to pretrial matters that this complex docket is likely to require.

   4. **The Northern District of Illinois is Easily Accessible**

The Northern District of Illinois is the most accessible location for the parties, witnesses, and documents. Chicago, Illinois is not only geographically located near the center of the country, it is also (as previously referenced) the principal place of business of the AbbVie Defendants. The United States District Court is only eighteen miles from Chicago O'Hare International Airport, which serves all major cities with approximately

9

1,036 daily direct flights to 140 U.S. cities. Chicago has a well-running public transportation system, and has numerous hotels and conference facilities that are closely situated to the courthouse. It is a far more accessible location than any the Barrios Plaintiffs, the Albright Plaintiffs, or the Tejeda Plaintiffs propose; based on the parties to this litigation and the nature of domestic travel, Chicago is far more accessible than either New Orleans or Philadelphia.

### III.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Panel grant the pending motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 and enter an order that the related actions be consolidated and transferred to the United States District Court for the Northern District of Illinois, Eastern Division.

Dated: April 21, 2014

Respectfully Submitted,


/s/ David S. Ratner
Morelli Alters Ratner LLP
David S. Ratner, Esq.
Jake Nachmani, Esq.
950 Third Avenue, 11th Floor
New York, NY 10022
(212) 751-9800
DRatner@morellialters.com
JNachmani@morellialters.com