**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|   |   |   |
|---|---|---|
| IN RE: ANDROGEL PRODUCT LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 2545 |

**INTERESTED PARTY RESPONSE OF PLAINTIFF DANIEL T. SCHENKEIN IN SUPPORT OF TRANSFER AND CONSOLIDATION OF CERTAIN TESTOSTERONE REPLACEMENT THERAPY CASES PURSUANT TO 28 U.S.C. § 1407, AND REQUESTING TRANSFER TO THE DISTRICT OF COLORADO**

**I.   INTRODUCTION**

Plaintiff Daniel T. Schenkein filed his Complaint in the United States District Court for the District of Colorado, seeking recovery for injuries caused by the defective testosterone drug AndroGel, which was designed, manufactured, labeled, marketed, distributed, sold, introduced into the stream of commerce by Defendants AbbVie, Inc. and Abbott Laboratories, Inc.[1]

Pursuant to Rule 6.2(e) of the Judicial Panel on Multidistrict Litigation Rules of Procedure, Plaintiff Schenkein submits this Interested Party Response to the following Motions currently before the Panel in MDL No. 2545:

1)   Motion for Transfer, Coordination, and/or Consolidation pursuant to 28 U.S.C. § 1407, filed on March 28, 2014 by fifteen Plaintiffs (collectively, "Blades Illinois Plaintiffs") seeking transfer of all related actions involving the defective drug AndroGel to the U.S. District Court for the Northern District of Illinois; and

2)   Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407, filed on April 14, 2014 by Plaintiffs Rafael and Connie Barrios (collectively,

---

[1] *Daniel T. Schenkein v. AbbVie, Inc., and Abbott Laboratories, Inc.*, D.C.Colo., Case No. 1:14-cv-910. Complaint provided as Exhibit A.

"Barrios Louisiana Plaintiffs"), seeking coordination or consolidation of related actions involving all testosterone replacement therapy products manufactured by various defendants, and transfer of all such actions to the United States District Court for the Eastern District of Louisiana.

Also presently before the Panel are the following Interested Party Responses to the above Motions to Transfer:

1) Response in Support of Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407 and Request for Transfer to the Eastern District of Pennsylvania, filed by Plaintiffs Albright, Harris, Husted, and McGill (collectively, "Albright Pennsylvania Plaintiffs") seeking coordination or consolidation of all related actions involving all testosterone replacement therapy products, and transfer of all such actions to the U.S. District Court for the Eastern District of Pennsylvania;

2) Response in Support of Motion for Transfer and Coordination or Consolidation Pursuant to 28 U.S.C. § 1407 and Request for Transfer to the Eastern District of Pennsylvania, filed by Plaintiffs Tejeda and Hill (collectively, "Tejeda Pennsylvania Plaintiffs"), seeking coordination or consolidation of all related actions involving all testosterone replacement therapy products, and transfer of all such actions to the U.S. District Court for the Eastern District of Pennsylvania;

3) Response in Support of Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407, filed by ten plaintiffs whose cases are filed in the Northern District of Illinois (collectively, "Aurecchia Illinois Plaintiffs"), and

submitted in further support of the Blades Illinois Plaintiffs' request for coordination or consolidation of all related actions and transfer to the U.S. District Court for the Northern District of Illinois; and

4) Response in Support of Motion for Transfer and Coordination or Consolidation under 28 U.S.C. § 1407, filed on April 23, 2014 by Plaintiffs Santo LoCoco and Sharon LoCoco (collectively, "LoCoco Louisiana Plaintiffs"), supporting coordination or consolidation of related actions involving all testosterone replacement therapy products manufactured by various defendants, and transfer of all such actions to the United States District Court for the Eastern District of Louisiana.

Plaintiff joins all movants and responding parties in requesting transfer and coordination or consolidation of related actions pursuant to 28 U.S.C. § 1407. Plaintiff also respectfully argues in favor of coordinated management of claims against multiple manufacturers of different testosterone replacement therapy products in a single MDL. Finally, as set forth in more detail herein, Plaintiff respectfully argues that the most appropriate forum for this MDL is the U.S. District Court for the District of Colorado.

## II. STANDARD

Multidistrict consolidation is appropriate where it will "'promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1229 (9th Cir. 2006), *quoting* 28 U.S.C. § 1470(a). Upon a motion for transfer, the Judicial Panel on Multidistrict Litigation "analyzes each group of cases in light of the statutory

criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Products Liability Litigation,* 460 F.3d at 1230.

The Panel has used various criteria to determine the most appropriate transferee forum under 28 U.S.C. § 1407. Among the factors the Panel considers when selecting a transferee forum are whether the forum: "(1) is not overtaxed with other MDL cases, (2) has a related action pending in its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties." Herr, David, *Annotated Manual for Complex Litigation,* § 22.32, p. 541 (4th ed. 2007).

### III. <u>ARGUMENT</u>

Plaintiff respectfully argues in favor of coordination and consolidation of testosterone replacement therapy product cases. Further, Plaintiff supports consolidation of claims against all testosterone replacement therapy product manufacturers against whom cases are currently pending, and argues that the U.S. District Court for the District of Colorado is the most appropriate transferee forum.

#### A. **MULTIDISTRICT COORDINATION PURSUANT TO 28 U.S.C. § 1407 IS APPROPRIATE FOR CLAIMS INVOLVING TESTOSTERONE REPLACEMENT THERAPY PRODUCTS**

Plaintiff agrees with those moving and responding parties who request coordination of claims against multiple testosterone therapy manufacturers in a single MDL. Section 1407 authorizes the Panel to transfer related actions to single district for coordinated or consolidated proceedings if they involve "one or more common questions of fact." 28 U.S.C. § 1407. Coordination of claims against multiple testosterone manufacturers will achieve the goals of 28 U.S.C. § 1407 by conserving judicial resources, promoting efficient management of litigation, and avoiding inconsistent pretrial rulings. *See id.*

**1. Coordination of related actions against multiple testosterone defendants is appropriate because the related actions involve common questions of law and fact.**

Common questions of law and fact exist in the related actions and will play a large role this litigation. As the Panel has previously recognized, in cases involving multiple defendants, "centralization under Section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings…, and conserve the resources of the parties, their counsel and the judiciary." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F.Supp.2d 1377, 1379 (J.P.M.L. 2001). Section 1407 permits the Panel to establish an MDL even if there is just one common question or law or fact among the consolidated cases. *See* 28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.") Here, there will be many common issues that will be most efficiently resolved in a coordinated proceeding.

The fact that the legal or factual questions facing the each of the testosterone defendants are not identical does not preclude coordination of claims involving multiple defendants. There have been several successful MDLs that involved multiple manufacturer defendants, including cases in which different legal or factual issues arose in cases against various defendants. For example, in *In Re Gadolinium-Based Contrast Agents Products Liability Litigation*, MDL 1909, claims against four manufacturers of five different gadolinium contrast agents were coordinated in a single MDL. *See In Re Gadolinium-Based Contrast Agents Products Liability Litigation*, 536 F. Supp. 2d 1380 (J.P.M.L. 2008). The Panel established the multi-defendant MDL over the objection of one of the manufacturer-defendants, and noted as follows: "Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can

formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, and (2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *Id.* at 1382 (internal citation omitted). *See also, e.g.*, *In re Phenlpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379-1380 (J.P.M.L. 2001 (coordinating actions against multiple manufacturers in a single MDL) ("Section 1407 does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization").

Many common questions will arise in every testosterone case, regardless of which testosterone manufacturers are named as defendants. For example, the testosterone replacement therapies all include the same key ingredient — testosterone — and all are expected to have a similar mechanism of action in causing the injuries at issue in the related actions, including heart attacks, strokes, and thromboembolic events. Therefore, the same issues of general causation will arise in case after case, and allowing one judge to manage all claims in a coordinated proceeding will achieve the efficiency objective set forth in Section 1407. *See* 28 U.S.C. § 1407(a). However, even to the extent there are chemical or pharmacological differences between the different testosterone replacement therapies, this will not undercut the benefits of coordinated management. In the *Gadolinium* MDL, for example, although the five gadolinium contrast agents all shared the same key ingredient — gadolinium — they had different chemical structures — some linear, some macrocyclic — and as a result they all behaved somewhat differently in patients' bodies and evidence suggested that some agents caused injury at greater rates than others. Nonetheless, the similarities shared among all gadolinium products outweighed those differences, and the coordinated litigation provided for effective management

6

of claims against all four manufacturers. *See Re Gadolinium-Based Contrast Agents Products Liability Litigation*, 536 F. Supp. 2d at 1381-1382 (ordering coordinated management of related cases involving different gadolinium contrast agents over one manufacturer-defendant's objections that "(1) the actions do not share sufficient questions of fact because each of the contrast agents is chemically and pharmacologically different; (2) because of the unique properties of each contrast agent, a global MDL will impinge upon the due process rights of the separate defendant companies"). The same would hold true with regard to the various testosterone replacement therapy products.

Here, the related actions pending against the manufacturers of the various testosterone replacement therapies will involve many common questions of law and fact and are thus well-suited to coordination under Section 1407. To the extent there are also differing legal and factual questions, the MDL judge will be vested with the necessary authority to create an effective and efficient pre-trial plan that accounts for those differences.

> **2. Coordination of related actions against multiple testosterone defendants for pre-trial proceedings will promote the just and efficient conduct of the related actions.**

Consolidation or coordination of the related testosterone replacement therapy actions will promote the just and efficient conduct of the actions. By contrast, *not* coordinating the related actions will likely lead to inefficiency and needless waste of precious judicial resources due to duplicative proceedings that may result in inconsistent rulings and may actually create competition and confusion instead of efficiency. A single testosterone MDL will accomplish the goals of Section 1407 by, for example, allowing a single District Court Judge to develop a clear understanding of the scientific issues involved in this case, which will in turn result in consistent rulings on the admissibility of expert testimony. Given the sheer number of cases that are

expected to be filed against the testosterone replacement therapy manufacturers, the benefits of efficiency that will result from coordinated discovery and pre-trial rulings will be substantial. *See, e.g., In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.* 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (coordinating claims against multiple manufacturers of acetaminophen products in a single MDL) ("Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings (on *Daubert* issues and other matters), and conserve the resources of the parties, their counsel, and the judiciary.")

Additionally, many men who will file claims against the testosterone replacement therapy manufacturers will have used different testosterone replacement therapy products at one time or another, so their complaints may include claims against two or more manufacturers. In those cases, discovery will necessarily involve multiple defendants, and all pre-trial rulings will necessarily need to apply to more than one defendant. Coordinating all such proceedings in a single MDL will ensure that those pre-trial rulings are consistent across all cases, and will avoid the needless waste of resources by permitting the parties and the judiciary to focus resources in a single forum with the objective of resolving these matters as efficiently as possible.

In the event that the Panel sees fit to establish a coordinated proceeding for the related actions involving claims against multiple testosterone manufacturers, Plaintiff submits that MDL 2545 should be given a broader name to reflect that the MDL includes other testosterone replacement therapies in addition to AndroGel. Plaintiff proposes that an appropriate name would be "*In Re Testosterone Replacement Therapy Product Liability Litigation*."

### 3. The related actions currently pending against multiple testosterone defendants should be coordinated in a single MDL.

Plaintiff respectfully submits that all related actions, regardless of which manufacturer-defendants are involved, should all be centralized before a single MDL court. At this time,

however, Plaintiff submits that it is only appropriate to consolidate the related actions pending in the federal courts against the manufacturers of AndroGel, Testim, Androderm and Depo-Testosterone because they are the only testosterone replacement therapy products involved in cases currently pending in federal court. Because there appear to be no cases currently pending against the manufacturers of the testosterone replacement therapy products Axiron, Fortesta, Delatestryl, Striant, or Testopel, it would be premature to create a coordinated proceeding that would include the manufacturers of those drugs at this time. Should there come a time when cases are filed that involve those products, Plaintiff submits that those cases should be transferred into MDL 2545 — should the Panel establish an MDL.

### B. THE U.S. DISTRICT COURT FOR THE DISTRICT OF COLORADO IS THE MOST APPROPRIATE TRANSFEREE COURT

Once it has been determined that consolidation is appropriate, the focus shifts to identifying the most appropriate forum for transfer of these cases. When selecting a transferee forum in the past, this Panel has sought a forum that "(1) is not overtaxed with other MDL cases, (2) has a related action pending in its docket, (3) has a judge with some degree of expertise in handling the issues presented, and (4) is convenient to the parties." Herr, David, Annotated Manual for Complex Litigation, § 22.32, at 541 (4th ed. 2007). Plaintiff respectfully submits the U.S. District Court for the District of Colorado better meets the criteria historically utilized by the Panel than any of the other forums that have been suggested by the moving parties or other respondents. The District of Colorado is centrally located and convenient, is not currently burdened by a heavy MDL case load yet has the experience and resources to handle a large MDL litigation, and is home to a related action. Accordingly, Plaintiff Schenkein respectfully submits that the Panel should transfer all related cases to the District of Colorado.

1. **The District of Colorado is centrally-located, convenient and accessible to all parties and witnesses.**

The U.S. District Court for the District of Colorado is conveniently located in Denver, Colorado, which is a major metropolitan area that is well-served by a major international airport. Denver International Airport ("DIA") is a hub for both United and Frontier airlines, and provides reasonable flying times, with numerous non-stop options available, from all parts of the country. In its 2014 World Airport Awards, Skytrax, a worldwide airport research service, ranked DIA as the only U.S. airport in the top ten Best Airports handling 50 million or more travelers in the world, and also ranked DIA the second best regional airport in the United States. Denver provides ample resources for travelers, with numerous hotels and restaurants conveniently located within walking distance of the federal courthouses and throughout the downtown area. Moreover, the accommodations, food, and transportation in Denver are likely among the most reasonably priced anywhere in the country.

2. **The District of Colorado is not overtaxed by a heavy MDL docket, yet it has the needed resources and experience to manage the testosterone MDL.**

The District of Colorado is perfectly positioned to be able to efficiently resolve these cases. The District is not over-taxed by a heavy MDL docket. In fact, there is just one MDL currently pending in the District of Colorado.[2] This compares favorably to eighteen MDLs currently pending in the Eastern District of Pennsylvania, sixteen in the Northern District of Illinois, and six in the Eastern District of Louisiana.

It should also be noted that, in addition to the *In Re: Oppenheimer Rochester Funds Group Securities Litigation* currently pending in the District of Colorado, this District has

---

[2] Colorado's current MDL is MDL No. 2063, *In Re: Oppenheimer Rochester Funds Group Securities Litigation.*

successfully handled other complex MDL cases in the past.[3] Its clerk's office and support staff are therefore familiar with the administrative demands of multidistrict litigation, and have demonstrated their ability to effectively and efficiently deal with the issues that can be expected to arise in this matter.

Additionally, the District of Colorado has proven that it can efficiently manage its docket, meaning it will have the resources to efficiently manage this MDL. This Court has very qualified judges, including seven active Article III judges and five senior Article III judges. In the 12-month period ending September 30, 2013, the median time from filing to trial for civil cases filed in the District of Colorado that went to trial was 24.4 months, which compares to 24.1 months nationally.[4]

### 3. The District of Colorado has a Relevant Pending Action involving AndroGel

Another factor the Panel has considered in selecting the transferee district in prior MDLs is whether the Court has a related action pending in its docket. *See* Herr, David, Annotated Manual for Complex Litigation, § 22.32, at 541. Plaintiff Schenkein filed his case on March 28, 2014.[5] This case involves one of the testosterone replacement products, AndroGel, which has the largest market share, and it is anticipated that a very large number of cases will be filed

---

[3] The District of Colorado previously served as the transferee court for MDLs including the following: MDL No. 1788 (*In Re: Qwest Communications International, Inc. SEC & "ERISA" (No. II)*); MDL No. 1743 (*In Re: American Family Mutual Insurance Co. Overtime Pay Litigation)*; MDL. No. 1139 (*In Re: Wal-Mart Stores, Inc., Fair Labor Standards Act* Litigation); MDL No. 915 (*In Re: Alert Income Partners SEC Litigation*); MDL No. 798 (*In Re: Mountain States Telephone & Telegraph Co. Employee Benefit EP Litigation*); MDL No. 751 (*In Re Air Crash Disaster at Stapleton International Airport*); MDL No. 711 (*In Re: The Dow Chemical Co. "Sarabond" Products Liability Litigation*); MDL No. 335 (*In Re: Storage Technology Corp. SEC* Litigation); and MDL No. 79 (*In Re: King Resources Company Securities Litigation*).

[4] The median time to trial for cases in the Northern District of Illinois during the same time period was 29.0 months; 17.9 months for the Eastern District of Pennsylvania, and 19.1 months for the Eastern District of Louisiana.

[5] *Daniel T. Schenkein v. AbbVie, Inc., and Abbott Laboratories, Inc.*, D.C.Colo., Case No. 1:14-cv-910. Complaint provided as **Exhibit A** hereto.

against the same manufacturer defendants, AbbVie, Inc. and Abbot Laboratories, Inc., that are before the Court in the Schenkein matter.

IV. **CONCLUSION**

Accordingly, Plaintiff respectfully requests that this Panel order that all related actions involving the testosterone replacement therapy products — AndroGel, Testim, Androderm and Depo-Testosterone — be coordinated or consolidated for pre-trial proceedings pursuant to 28 U.S.C. §1407, and that all such related cases be transferred to the U.S. District Court for the District of Colorado in an MDL known as *In Re Testosterone Replacement Therapy Product Liability Litigation* (MDL No. 2545). Plaintiff further respectfully requests that this MDL include related actions against multiple manufacturers and, if/when cases involving other testosterone replacement therapy products are filed and are appropriate for consolidation, those cases also be transferred to MDL 2545.

DATED: April 23, 2014.

                                                                  Respectfully submitted,

                                                                  **BURG SIMPSON**
                                                                  **ELDREDGE HERSH & JARDINE, P.C.**

                                                                  *s/ Seth A. Katz*
                                                                  Seth A. Katz
                                                                  40 Inverness Drive East
                                                                  Englewood, CO  80112
                                                                 Telephone: (303) 792-5595
                                                                 Facsimile: (303) 708-0527
                                                                E-mail:  skatz@burgsimpson.com

                                                                *Attorneys for Plaintiff Daniel T. Schenkein*