BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

In Re: ANDROGEL PRODUCTS  )  MDL DOCKET NO. 2545
LIABILITY LITIGATION      )
                          )
                          )
                          )
                          )

**INTERESTED PARTY RESPONSE ON BEHALF OF ACTAVIS, INC.**

I.   INTRODUCTION

Actavis, Inc. ("Actavis") is a parent company of entities that manufacture and sell Androderm, a transdermal patch product indicated for the treatment of adult males having conditions associated with a deficiency or absence of endogenous testosterone. Actavis (and one or more of its subsidiaries) has been served in an Androderm product liability action filed in federal court in Nevada (*Hall*), and Actavis also has been served in a proposed personal injury class action filed in the Eastern District of Pennsylvania (*McGill*). Actavis is aware of three additional actions that have not been served and are filed in the Central District of California (*Couwenhoven*), the District of Nevada (*Davis*), and the Northern District of Illinois (*Schwalm*). *Dale A. Hall v. Actavis, plc, et al.*, No. 2:14-cv-00453 (D. Nev.); *Walter McGill, et al. v. Actavis, Inc., et al.*, No. 2:14-cv-02177 (E.D. Pa.); *Ronald Couwenhoven v. Abbott Laboratories, Inc., et al.*, No. 5:14-cv-667 (C.D. Ca.); *Wesley Davis, et al., v. Actavis Pharma, Inc., et al.*, No. 2:14-cv-000596 (D. Nev.); *Mickey Schwalm v. AbbVie Inc., et al.*, No. 1:14-cv-2899 (N.D. Ill.).

At this juncture, the Actavis cases do not require and would not benefit from centralization. There are only five federal Actavis cases. Two of those cases are filed in the same federal district – the District of Nevada. AbbVie, the seller of AndroGel, is not a co-defendant in either of those cases, and neither is Abbott. In fact, none of the

defendants seeking centralization is a party to those cases or to the *McGill* case in the Eastern District of Pennsylvania. Actavis has just two cases in which AbbVie is a co-defendant, and those cases can be transferred to an AndroGel MDL without complicating that MDL with myriad issues related to Androderm, a testosterone product that involves a different design and delivery system than AndroGel.

## II.    BACKGROUND

### A.    Product Differences

AndroGel is a topical testosterone replacement therapy product supplied in packets and in a bottle with a pump. The medication is administered by the patient either by emptying the contents of the packet or by pressing a pump a specified number of times into the palm of the hand and then applying the gel to the upper arm and shoulder. Androderm is a transdermal patch that also delivers testosterone through the skin but through a different delivery mechanism. The adhesive side of the Androderm patch is applied to a clean, dry area of the skin on the back, abdomen, upper arms, or thighs. The medication in Androderm is contained in a reservoir and passes through a membrane and into and through the skin. The medication is delivered to the patient over time, while the reservoir prevents inadvertent exposure to others. The differences between the AndroGel and Androderm products are the result of proprietary development and manufacturing processes. Not only are the design and delivery mechanisms different, but also the instructions for use and warnings are different.

The Actavis subsidiary that manufactures Androderm is located in Utah, and the entity that is the primary distributor and seller of the product is located in New Jersey. Accordingly, most of the witnesses and evidence relating to Androderm will be found in

those two states – and not in, or close to, Illinois. Only one of the numerous AndroGel cases pending in the Northern District of Illinois also asserts claims against Actavis or its subsidiaries, and Actavis is aware of only two cases where Androderm and AndroGel claims have been combined (*Couwenhoven* and *Schwalm*). Whether those cases should involve both products remains to be seen. The allegations in *Couwenhoven* indicate a lack of certainty regarding whether plaintiff actually used Androderm or AndroGel. In *Schwalm*, plaintiff contends that he was using AndroGel when he had a myocardial infarction and that, at the time of the myocardial infarction, he had not used Androderm in over a year. However, while the issues regarding which companies are proper defendants in each case are resolved, the cases can be transferred to an AndroGel MDL. If the Actavis entities are the only proper parties in a given case, the claims against AbbVie and Abbott can be dismissed, and the case can be remanded to the transferor district. If AbbVie is the proper party, the Actavis entities can be dismissed. It should not be necessary to conduct extensive general discovery against Actavis or its subsidiaries in an AndroGel MDL. Indeed, the parties and their counsel will be focused upon the scores of cases and discovery against AbbVie and Abbott.

### B.   Androderm Lawsuits

Actavis is aware of only five federal actions claiming personal injuries from the use of Androderm (and one state court action). None of the plaintiffs who originally sought to form this MDL suggested that it should include Androderm. And only one of the five plaintiffs who have brought Androderm claims is arguing in favor of an all-products MDL.

### III. CONSOLIDATION OF ANDRODERM CASES WITH ANDROGEL CASES INTO ONE MDL WOULD BE INEFFICIENT AND INCONVENIENT

Civil actions involving common questions of fact may be centralized for pretrial proceedings only upon determination by the Panel that doing so will be for "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C § 1407(a). Here, the request (by only one plaintiff) to include Androderm claims in this MDL should be denied because: (1) any common questions of fact are overwhelmed by individual issues; and (2) a combined MDL here would be complicated unnecessarily by company-specific discovery and proprietary and trade secret issues.

This Panel has consistently denied previous attempts to consolidate product liability cases involving diverse products and different manufacturers on the grounds that individual fact issues in those cases overwhelm any convenience and efficiency gained by consolidation. For example, in *In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp 2d 1350 (J.P.M.L, 2012), the Panel limited the MDL to just one product and manufacturer, stating:

> "[T]here are insufficient commonalities among the allegations made against the different defendants. Each group of cases against each manufacturer will involve unique products and defendant specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues – i.e. postmortem redistribution and the bare fact that all plaintiffs overdosed on fentanyl . . ."

The Panel noted that product design differences, in particular, made it inappropriate to combine the products and manufacturers in one MDL. *Id. See also, In re Shoulder Pain Pump – Chondrolysis Prods. Liab.,* 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (denying centralization of pain pump litigation involving multiple products and manufacturers).

4

Those principles apply with equal force here. The vast majority of the questions here – what the defendants knew about the alleged dangers of their products; whether defendants conducted adequate testing; whether defendants breached any warranties; whether defendants' disclosure of the risks and benefits of their products were accurate and proper; and whether defendants were negligent in marketing, promoting, or distributing their products – are defendant and product-specific issues. Discovery on those issues as to Abbott and Abbvie and AndroGel will have no applicability to Actavis or its subsidiaries or to Androderm (and vice versa). The only issue that might have some commonality is general causation, but even that issue may involve individual product design and administration issues, all of which will be further complicated by case-specific causation issues for the individual plaintiffs.[1]

Further, while an MDL in Illinois might be convenient for the parties and witnesses vis-a-vis AndroGel, the home territory of its seller, the opposite is true with respect to Androderm. Androderm is manufactured in Utah, and its primary distributor is headquartered in New Jersey. So, the witnesses and parties relating to Androderm are far removed from those pertaining to AndroGel and, thus, finding a venue that would be convenient and efficient for an MDL involving both products would be difficult. Indeed, at this juncture, with only five federal cases involving Androderm, and with two of them already being located in the same district, the venues suggested by some of the plaintiffs--the Eastern District of Pennsylvania, the Eastern District of Louisiana, and the District of Colorado--also are not attractive options that would warrant centralization of cases involving Actavis.

---

[1] Actavis recognizes that some companies, none of which manufacture patch products, agree that they should be part of an MDL. Actavis expresses no position on an MDL that might include those parties, such as an In re: AbbVie, Endo, and Lilly Testosterone Products MDL.

The fact that Androderm has a different design and different instructions for use and warnings than AndroGel further argues against mismatching it with AndroGel in the same MDL. As the Panel has previously observed:

> [P]lacing direct competitor manufacturer defendants into the same litigation would require protecting trade secret and confidential information from disclosure to all parties and complicate case management.

*In re: Spray Polyurethane Foam Insulation Prods. Liab. Litig.,* 949 F. Supp. 2d 1364 (J.P.M.L. 2013).

Finally, the few Androderm cases pale in comparison to the 64, and threatened thousands, of AndroGel suits. The volume of work and expense likely to be generated by so many cases will be substantial, and forcing the Androderm defendants to be dragged through those processes would be unnecessarily burdensome and inefficient.

## IV. CONCLUSION

Androderm does not belong in an MDL involving AndroGel (or other dissimilar and competing products). Indeed, it is premature to conclude that it belongs in any MDL. Thus, if AndroGel cases are to be centralized, Actavis respectfully requests that such centralization not include Androderm cases, except in the limited circumstance where Actavis has been named in a complaint with AbbVie, as discussed above.

       Respectfully submitted,

       <u>/s/ *Joseph P. Thomas*</u>
       Joseph P. Thomas (OH #0040379)
       ULMER & BERNE LLP
       600 Vine Street, Suite 2800
       Cincinnati, OH  45202
       Tel:   (513) 698-5000
       Fax:   (513) 698-5001
       E-mail:  jthomas@ulmer.com

       ***Attorney for Defendant Actavis, Inc.***