BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| | ) | |
| In Re: AndroGel Product Liability Litigation | ) | MDL Docket No. 2545 |
| | ) | |
| | ) | |

**RESPONSE OF ABBVIE, ABBOTT LABORATORIES,
ELI LILLY, AND ENDO PHARMACEUTICALS
TO PLAINTIFFS' MOTION
FOR TRANSFER, COORDINATION, AND/OR CONSOLIDATION**

Defendants AbbVie Inc., Abbott Laboratories, Eli Lilly and Company, Lilly USA LLC, and Endo Pharmaceuticals Inc. hereby respond to Plaintiffs' original transfer motion and the responses to it, and urge the Panel to centralize the pending testosterone replacement therapy product liability lawsuits before the Honorable Matthew F. Kennelly of the Northern District of Illinois.

## INTRODUCTION

These actions all allege, in substantially identical complaints, that men were treated with testosterone replacement medications and then suffered an injury such as heart attack or stroke. The Panel should centralize all of them in one district.

The statutory criteria are plainly met. The cases all involve one or more common questions of fact, such as whether testosterone replacement therapies are even capable of causing the complained-of injuries. Centralizing the cases for coordinated pre-trial proceedings would also be for the convenience of the parties and witnesses, and it would promote the just and efficient conduct of these actions. At the time of this writing, there are 74 testosterone replacement therapy cases pending in 7 different United States District Courts. 56 of those cases—76 percent of all pending federal cases—are consolidated in the Northern District of

Illinois before Judge Kennelly.  The pending federal cases are collectively being handled by over 35 plaintiffs' law firms.  Plaintiffs' counsel who filed the original MDL motion has stated, in a Brief to the Panel, that thousands more cases, brought by even more plaintiffs' lawyers, are soon on the way.  Without the establishment of a coordinated proceeding, the parties and judiciary will face inconsistent rulings, duplicative discovery, and likely scheduling conflicts in attempting to litigate these cases effectively and efficiently.

The best choice for centralization, as stated in the original MDL motion, is the Northern District of Illinois.  For these testosterone replacement therapy cases in particular, that court is superior to every alternative, in that the Northern District of Illinois is:

- Preferred by most parties, including most Plaintiffs, most Defendants (AbbVie, Abbott Laboratories, Eli Lilly, Lilly USA, and Endo Pharmaceuticals), and one Defendant (Auxilium Pharmaceuticals) that objects to an MDL but agrees that the Northern District of Illinois is the best transferee court if an industry-wide MDL is ordered;
- Home of the first-filed cases;
- Where most of the testosterone replacement therapy cases are pending: 56 of 74 currently pending federal cases, or nearly 80% of the federal cases;
- Where the cases have progressed the furthest;
- The home of AbbVie, Abbott Laboratories, and their witnesses and documents;
- Centrally located and easily accessible; and
- Proven adept at handling MDL litigation.

The fact that the largest number of cases have been brought in the Northern District of Illinois is not surprising, because AbbVie sells AndroGel, which has a leading share of the U.S. testosterone replacement market that has been estimated at approximately 60 percent.  When considering all factors, the center of gravity of the testosterone replacement therapy litigation is in the Northern District of Illinois.

The other potential transferee courts that have been proposed so far are very able courts in general, but they are not the most appropriate courts to handle a testosterone replacement

therapy MDL in particular. The Eastern District of Louisiana has just 6 of the 74 federal cases, and it is the first choice of only the Plaintiffs in those cases.  It is the home of no Defendant's headquarters or evidence, it is not centrally located for parties spread across the nation, and the cases there have not advanced.  The situation is similar in the Eastern District of Pennsylvania, the only notable exception being that two Defendants are located there. But one of them, Endo Pharmaceuticals, prefers the Northern District of Illinois, as does the other (Auxilium Pharmaceuticals) if the Panel grants an industry-wide MDL.  The third proposed transferee court, the District of Colorado, has only one case, it is not the location of any Defendant, it is not centrally located, and no one besides the sole Colorado Plaintiff and his Colorado counsel prefers it.

Within the Northern District of Illinois, the moving Plaintiffs are correct that Judge Kennelly should receive the centralized cases.  He is an able and experienced MDL jurist, the very first of the testosterone replacement therapy cases in the nation was assigned to him, and a total of 56 Northern District of Illinois cases have already been (or soon will be) reassigned to him for consolidated pretrial proceedings.  He has far more cases, and he knows more about them, than any other judge in the country.

For all of these reasons and those stated below, AbbVie, Abbott Laboratories, Eli Lilly, Lilly USA, and Endo Pharmaceuticals respectfully urge the Panel to transfer all of the testosterone replacement therapy product liability cases to an MDL in the Northern District of Illinois and assign them to Judge Kennelly for consolidated and coordinated pre-trial proceedings.

**BACKGROUND**

A.      **Hypogonadism and Testosterone Replacement Therapies**

Hypogonadism is a medical condition that in men is characterized by low or no testosterone.  A large body of literature from the last 20 years has linked low testosterone levels in men to cardiovascular events such as heart attack or stroke.  The literature has also established that higher levels of testosterone are associated with a lower risk of cardiovascular events in men with otherwise low testosterone.  For example, one recent article reviewed over 100 studies and found that low levels of testosterone are associated with higher rates of mortality, including cardiovascular-related mortality.[1] Another recent study found that testosterone replacement therapies in men who had hypogonadism resulted in a 39 percent decrease in mortality risk.[2] For the past 20 years, the FDA has approved testosterone replacement therapies for men with hypogonadism.

Each of the Defendants filing this Response provides FDA-approved prescription medications for use in testosterone replacement therapy.  Those medications are supplied in various forms, including gels, injectable medications, patches, and tablets.[3]

B.      **The FDA and Recent Testosterone Studies**

On January 31 of this year, the FDA announced that it is investigating the risk of stroke, heart attack, and death in men taking FDA-approved testosterone replacement therapies.[4]  The

---

[1] Oskui et al., Testosterone and the Cardiovascular System: A Comprehensive Review of the Clinical Literature, *Journal of the American Heart Association* (2013).

[2] Shores et al., Testosterone Treatment and Mortality in Men with Low Testosterone Levels, *The Journal of Clinical Endocrinology and Metabolism* (2012).

[3] The different forms of testosterone replacement therapies may deserve or require some degree of differing treatment in the litigation.  This issue can be addressed as appropriate by the transferee judge.

[4] The announcement is available at http://www.fda.gov/drugs/drugsafety/ucm383904.htm.

FDA made this announcement in response to two recent studies that suggested an increased risk of cardiovascular events among groups of men who were prescribed testosterone replacement therapies.

The first of those studies appeared in November 2013 in the *Journal of the American Medical Association* (*JAMA*).  It has been widely criticized in the medical community, and there is now a petition, signed by 25 medical societies, to have it retracted.[5]  The admitted errors in the study—one of which was including 100 women in a study about male testosterone therapy[6]— have already resulted in two public corrections.  Moreover, the men in the study were already in poor health (for example, they had all undergone cardiac catheterization, and 55 percent had obstructive coronary artery disease),[7] and they continued to have low testosterone even after the treatment with testosterone therapy,[8] raising the possibility that these men were at risk for cardiovascular events by virtue of their medical histories and low testosterone, rather than because of medical efforts to treat them.  Finally, only 1.1 percent of the study participants used a testosterone gel, which provides testosterone at a relatively lower concentration than other forms of therapy.  The study did not report whether even a single man using gel suffered a cardiovascular event.

---

[5] News of the petition is available at http://www.prnewswire.com/news-releases/twenty-five-medical-societies-join-androgen-study-group-to-petition-jama-to-retract-misleading-testosterone-study-254707661.html.

[6] See the correction at http://jama.jamanetwork.com/article.aspx?articleid=1835478. The warning labels for testosterone gels warn women against even "secondary exposure"—that is, touching a man's skin where the gel was applied.

[7] Does Testosterone Cause Heart Attacks? A Response to JAMA, available at http://truttmd.com/testosterone-cause-heart-attacks-response-jama/.

[8] Response to Media Reports Association Testosterone Treatment with Greater Heart Attack Risk, available at https://www.lef.org/featured-articles/Response-to-Media-Reports-Associating-Testosterone-Treatment-with-Greater-Heart-Attack-Risk.htm.

The second study appeared in January 2014 in the *PLoS One* journal.  It examined a database of health care records for a group of men who were prescribed testosterone replacement therapies, comparing them to records for men who were prescribed erectile dysfunction drugs. The choice of men using erectile dysfunction drugs was inappropriate, because such drugs can have a beneficial effect on certain cardiovascular conditions.[9]  In any event, the study found that testosterone replacement therapies did ***not*** increase the risk of heart attack or stroke in men under age 65 who had no prior cardiovascular issues.

The FDA cautioned that it is continuing to evaluate these studies and other available data. The FDA also stated:

> At this time, FDA has ***not*** concluded that FDA-approved testosterone treatment increases the risk of stroke, heart attack or death. Patients should ***not*** stop taking prescribed testosterone products without first discussing any questions or concerns with their health care professionals. Health care professionals should consider whether the benefits of FDA-approved testosterone treatment [are] likely to exceed the potential risks of treatment. The prescribing information in the drug labels of FDA-approved testosterone products should be followed.

(emphasis added).

### C.      Testosterone Replacement Therapy Product Liability Lawsuits

Within days of the FDA's announcement, lawsuits began to be filed alleging personal injuries from treatment with testosterone replacement therapies. The first group of cases was filed against AbbVie[10] and Abbott Laboratories, for the testosterone gel AndroGel, in the Northern District of Illinois.

---

[9] Pharmacologic Therapy for Erectile Dysfunction and its Interaction with the Cardiovascular System, *Journal of Cardiovascular Pharmacology and Therapeutics*, available at http://www. ncbi.nlm.nih.gov/pubmed/24281316.

[10] AbbVie was established as an independent, publicly traded company at the beginning of 2013 from the pharmaceutical business of Abbott Laboratories, which no longer sells AndroGel in the United States.

The very first of these cases was assigned to Judge Matthew F. Kennelly. On March 14, 2014, the Executive Committee of the Northern District of Illinois ordered that 30 of these actions be consolidated before Judge Kennelly for coordinated pretrial proceedings. As additional cases are filed in the Northern District of Illinois, they are added to the consolidated proceedings. The proceedings before Judge Kennelly include 56 cases that are already (or are about to be) consolidated. The Defendants in the cases before Judge Kennelly are AbbVie, Abbott, Lilly USA, Eli Lilly, Endo, Auxilium, Actavis, and Watson.

In addition to the 56 cases in the Northern District of Illinois, at the time of this writing there are 18 other testosterone replacement therapy product liability actions pending in 6 other United States District Courts, for a grand total of 74. The other districts are the Eastern District of Pennsylvania (8 cases), the District of Colorado (1 case), the Eastern District of Louisiana (6 cases), the Western District of Louisiana (1 case), the Middle District of Florida (1 case), and the District of Nevada (1 case). Two of these are pleaded as class actions. One, in the Eastern District of Louisiana, seeks certification of a statewide class of AndroGel users. The other, in the Eastern District of Pennsylvania, seeks certification of a nationwide class of Androderm and Depo-Testosterone users.

In 11 of the federal cases, the Plaintiff claims to have been treated with two or more testosterone replacement medications and named two or more companies as co-Defendants. By far the most common co-Defendants are AbbVie and Abbott Laboratories, one or both of which is named in 10 of the 11 cases in federal court involving claims based on the use of more than one product.

The Schedule of Actions attached as Exhibit A identifies all of the pending testosterone replacement therapy product liability actions pending in federal court. These include actions not

previously identified by the moving or responding Plaintiffs.  The docket sheets and complaints for the 8 potential tag-along actions not previously identified are being filed contemporaneously in accordance with the Panel's rules.

The complaints in all of these actions are very similar.  They all allege the FDA's announcement, the two recent studies, and the claim that the plaintiff was treated with one or more testosterone replacement therapy medications and suffered a heart attack, stroke, or other ailment. They also assert, with some variations, the same core causes of action: strict liability (failure to warn), negligence, breach of implied warranty, breach of express warranty, fraud, and negligent misrepresentation. (Some complaints add additional causes of action.) The great majority of the complaints are all but photocopies of each other. Just a few short paragraphs in each complaint are specific to the plaintiff, generally identifying his state of residence, age, and medical injury.

All of these cases are in the earliest stages of litigation.  Some of the summons and complaints have not yet been served.  The most advanced cases are the ones included in the consolidated proceeding in the Northern District of Illinois. Judge Kennelly has held a status hearing, set a briefing schedule for a motion to dismiss for 39 of the cases, and directed the parties to confer regarding a document preservation order, a protective order, certain matters related to electronically stored information, and the format of a plaintiff's fact sheet.  (Ex. B, Pretrial Order No. 2.)

New testosterone replacement therapy cases continue to be filed on an almost daily basis. The moving Plaintiffs' Brief (at 6) states that thousands of additional cases are going to be filed. This echoes statements that counsel made during the proceedings that resulted in the consolidation of the cases before Judge Kennelly, where it was represented that individual

plaintiffs' firms have hundreds of cases under active review.  These soon-to-be-filed cases should be taken into account as the Panel decides whether to create an MDL.

## ARGUMENT

I.   **All of the testosterone replacement therapy product liability actions should be centralized in one District Court for coordinated and consolidated pretrial proceedings.**

Section 1407(a) directs the Panel to centralize in a single district all civil actions "involving one or more common questions of fact" if the Panel determines that centralizing "will be for the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions."  Each criteria is satisfied here.

Although Defendants strongly disagree with the many superfluous statements in Plaintiffs' briefs about the merits of the claims in these cases, Defendants do agree that these cases present one or more common questions of fact.  One common question of fact is whether FDA-approved testosterone replacement therapies are capable of causing the complained-of injuries at all.  There will, of course, be many important individual issues in these cases, such as whether each plaintiff's injury was actually caused by treatment with the testosterone replacement medication he claims to have used, but the requirement of "one or more common questions of fact" is plainly met.  In that regard, these testosterone replacement therapy cases are similar to other pharmaceutical product liability cases, which the Panel has routinely recognized as appropriate for an MDL.[11]

---

[11] *See, e.g., In re Yasmin, Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 655 F. Supp. 2d 1343 (J.P.M.L. 2009) (oral contraceptive drugs); *In re Bextra and Celebrex Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005) (anti-inflammatory drugs); *In re Accutane Prods. Liab. Litig.*, 343 F. Supp. 2d 1382 (J.P.M.L. 2004) (acne drug); *In re Zyprexa Prods. Liab. Litig.*, 314 F. Supp. 2d 1380 (J.P.M.L. 2004) (drug used to treat schizophrenia); *In re Paxil Prods. Liab. Litig.*, 296 F. Supp. 2d 1374 (J.P.M.L. 2003) (anti-depressant drug); *In re Prempro Prods. Liab. Litig.*, 254 F. Supp. 2d 1366 (J.P.M.L. 2003) (hormone therapy drug); *In re Meridia Prods. Liab. Litig.*, 217 F. Supp. 2d 1377 (J.P.M.L. 2002) (weight-loss drug).

Defendants also agree that coordinated proceedings in a single district court will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Given that the complaints make nearly identical allegations and seek relief under the same common core causes of action, pretrial rulings on the same or similar issues without consolidation would be sure to generate inconsistent results. Coordinating the actions before a single judge will eliminate this problem. *See, e.g.*, *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 802 F. Supp. 2d 1374, 1376 (J.P.M.L. 2011) (consolidation "will eliminate duplicative discovery, prevent inconsistent pretrial rulings on *Daubert* and other pretrial issues, and conserve the resources of the parties, their counsel and the judiciary"); *see also* Manual for Complex Litig., Fourth, § 22.33 ("Centralization serves judicial economy by avoiding duplication of discovery, preventing inconsistent or repetitive rulings, and conserving the financial resources of the parties, their counsel, and the judiciary.").

In addition, individual Plaintiffs are certain to seek the same discovery from Defendants, including production of the same documents and the deposition testimony of the same witnesses. For their part, Defendants are likely to seek similar types of information and documents from each Plaintiff. A single pretrial discovery plan administered by one judge will therefore clearly benefit the parties, witnesses, and judiciary. *See, e.g.*, *In re Pharmastem Therapeutics, Inc. Patent Litig.*, 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005) (MDL will ensure "all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions").

Centralizing the testosterone replacement therapy actions is also warranted due to the large number of plaintiffs' counsel already involved in these cases. The complaints on file at the

time of this writing identify over 35 different plaintiffs' law firms, and the moving Plaintiffs' Brief (at 2) states that more plaintiffs' law firms are expected to file cases.  It would be extraordinarily difficult, and perhaps not possible, to coordinate the efforts of and responses to dozens of different plaintiffs' firms without a coordinated proceeding.

The fact that many of these cases involve more than one product and more than one Defendant is a strong reason for *all* of the testosterone replacement therapy actions—not just the AndroGel cases that are the focus of the original MDL motion—to be centralized.  If only the AndroGel cases are centralized, the co-Defendants who were also sued in some of those cases would find themselves litigating in both the AndroGel MDL and in the courts that have the non-AndroGel cases.  The benefits and efficiencies of an MDL would be lost for those Defendants and the plaintiffs in those cases.  But if for any reason the Panel determines that an industry-wide MDL is inappropriate, AbbVie and Abbott Laboratories join the moving Plaintiffs' request to have all of the AndroGel cases centralized.

## II.     The actions should be centralized before Judge Kennelly in the Northern District of Illinois.

Defendants also agree with the moving Plaintiffs that the AndroGel cases should be centralized in the Northern District of Illinois, and specifically before Judge Kennelly.

According to the factors that the Panel commonly considers, *see, e.g.*, Manual for Complex. Litig., Fourth, § 22.33, the Northern District of Illinois is the ideal district for centralizing these cases.  Its advantages include all of the following:

- *Preferences of the parties*. AbbVie, Abbott Laboratories, Eli Lilly, Lilly USA, Endo Pharmaceuticals, and 56 of the 74 Plaintiffs whose cases are in federal court all prefer the Northern District of Illinois.

- *Location of the first-filed action*.  The first case was filed in the Northern District of Illinois and assigned to Judge Kennelly. *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 588 F. Supp. 2d 1374, 1375 (J.P.M.L. 2008); *In re Levaquin*

*Prods. Liab. Litig.*, 560 F. Supp. 2d 1384, 1385 (J.P.M.L. 2008).  In fact the first several cases were filed in the Northern District of Illinois.

- *Concentration of the actions*.  The Northern District of Illinois has by far the most cases, and they have already been consolidated before Judge Kennelly.  *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 588 F. Supp. 2d at 1375; *In re Levaquin Prods. Liab. Litig.*, 560 F. Supp. 2d at 1385; *In re Incretin Mimetics Prods. Liab. Litig.*, 2013 WL 4838859, at *2 (J.P.M.L.); *In re Mirapex Prods. Liab. Litig.*, 493 F. Supp. 2d 1376, 1377 (J.P.M.L. June 22, 2007).

- *Pretrial progress of the actions*.  The cases before Judge Kennelly have made the most progress.  *Id.*  The briefing schedule for a motion to dismiss has been set, and pre-discovery activities, such as negotiation of a protective order, are underway.

- *Proximity to parties, documents, and witnesses*. AbbVie and Abbott Laboratories are both located in the Northern District of Illinois, so their documents and witnesses are here.  *See, e.g.*, *In re Navistar 6.0 L Diesel Engine Prods. Liab. Litig.*, 777 F. Supp. 2d 1347, 1348 (J.P.M.L. 2011) (centralizing in the Northern District of Illinois because "[d]efendants' headquarters, and therefore relevant documents and witnesses, are located in or relatively near [the] district").  The other parties and likely witnesses, such as other Defendants, Plaintiffs, and their doctors, are spread across the nation, not concentrated in any district.

- *Geographic centrality*.  The Northern District of Illinois, centered around Chicago, is accessible and convenient for all parties and witnesses.  Market leader AbbVie, Abbott Laboratories, and their counsel are located there, and many of the firms currently representing Plaintiffs have offices in the area.  Chicago is one of the nation's largest cities, located near the country's center, and it has two major airports and convenient transportation. Given that these cases are likely to involve Plaintiffs, witnesses, and attorneys from dozens of districts across the country, Chicago's central location and accessibility make it a convenient location for the proceedings. *See, e.g.*, *In re Watson Fentanyl patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1352 (J.P.M.L. 2012) (selecting the Northern District of Illinois since it "provides a convenient and accessible forum for this litigation in which actions have been filed throughout the country regarding a product marketed nationwide."); *In re "Factor VIII or IX Concentrate Blood Products" Prod. Liab. Litig.*, 853 F. Supp. 454 (J.P.M.L. 1993) (selecting the Northern District of Illinois since "Chicago is a geographically central location for this nationwide litigation").

- *MDL experience*.  The Northern District of Illinois has significant experience with MDLs: 79 successfully managed and 15 now pending, including many pharmaceutical and other product liability actions.[12]

---

[12] J.P.M.L., *Multidistrict Litigation Terminated Through September 30, 2013* at 25-27 (Ex. C); J.P.M.L., *MDL Statistics Report by District* (Ex. D); *In re Watson Fentanyl Patch Prods. Liab. Litig.* (MDL-2372) (still pending); *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.* (MDL-2272) (still pending); *In re Factor VIII or IX Concentrate Blood Products. Liab. Litig.* (MDL-986); *In re Brand Name Prescription Drugs Antitrust Litig.* (MDL-997); *In re Abbott Laboratories Omniflax Prods. Liab. Litig.* (MDL-1004); *In re Amino Acid Lysine Antitrust Litig.* (MDL-1083); *In re Synthroid Marketing Litig.* (MDL-1182); *In re Plasma-Derivative Protein*

If the actions are transferred to an MDL in the Northern District of Illinois, Judge Kennelly, who has already been assigned responsibility for pretrial proceedings in all of the testosterone therapy product liability cases pending in that district, is clearly an appropriate judge to preside over the MDL proceeding.  He is an able judge and administrator, having served on the court for nearly 15 years and on its Executive Committee for six years.  He is a well-respected jurist with a demonstrated ability to prudently and efficiently manage complex civil litigation, including multi-district litigation and mass torts. *See, e.g.*, *Terkel v. AT&T*, Case Nos. 06-cv-2827, 06-cv-2680 (N.D. Ill. 2006); *Trujillo v. Apple Computer*, Case No 7-cv-4946 (N.D. Ill. 2008).  He currently manages two MDL cases—No. 1997 (*In re Text Messaging Antitrust Litigation*) and No. 2372 (*In re Watson Fentanyl Patch Products Liability Litigation*)—and the Panel recently described him as an "experienced MDL jurist."  *In re Watson Fentanyl Patch Prods. Liab. Litig*., 883 F. Supp. 2d 1350, 1352 (J.P.M.L 2012).

Judge Kennelly immediately took charge of the testosterone replacement therapy cases consolidated before him.  At his first status conference, he set a briefing schedule for a motion to dismiss and directed the parties to engage in pre-discovery activities.  In short, he is handling far more testosterone replacement therapy cases, and he is more familiar with the testosterone replacement therapy litigation, than any other judge in the country.  *In re Tylenol*, 936 F. Supp. 2d 1379 (J.P.M.L. 2013) (creating MDL where the transferee judge "is already overseeing the 21 constituent actions pending in that district, [and] served as transferee judge in [another MDL] ... [and] is an experienced jurist"); *In re Accutane Prods. Liab. Litig.*, 343 F. Supp. 2d at 1383; *In re NuvaRing Prods. Liab. Litig.*, 572 F. Supp. 2d 1382, 1383-84 (J.P.M.L. 2008).

---

*Therapies Antitrust Litig.* (MDL-2109); *In re General Motors Corp. Type III Door Latch Prods. Liab. Litig.* (MDL-1266); *In re StarLink Corn Prods. Liab. Litig.* (MDL-1403); *In re RC2 Corp. Toy Lead Paint Prods. Liab. Litig.* (MDL-1893); *In re Aqua Dots Prods. Liab. Litig.* (MDL-1940).

**III.    The actions should not be centralized in the Eastern District of Louisiana, the Eastern District of Pennsylvania, or the District of Colorado.**

The Plaintiffs who filed the original MDL motion sought centralization in the Northern District of Illinois, but other Plaintiffs have filed briefs recommending the Eastern District of Louisiana, the Eastern District of Pennsylvania, and the District of Colorado.  Those districts are, for these testosterone replacement therapy product liability cases in particular, not as well suited for the proposed MDL as the Northern District of Illinois.

The briefs in favor of those districts praise their generic virtues: wise judges, capable clerks, MDL experience, docket speed, and nearby airports, among others.  But that does nothing to distinguish them for these testosterone replacement therapy actions in particular.  Each of the four districts now being advocated has extensive MDL experience, able clerks' offices, efficient dockets, reliable transportation, and respected jurists.

But the three districts are not the same.  The Northern District of Illinois is uniquely well-suited to be the transferee court for these cases.  Here are the points of comparison: (please see next page)

14

| | **Northern District of Illinois** | Eastern District of Louisiana | Eastern District of Pennsylvania | District of Colorado |
|---|---|---|---|---|
| First-filed case | **Yes** | No | No | No |
| Largest number of cases | **Yes** | No | No | No |
| Number of cases | **56** | 6 | 8 | 1 |
| Cases already consolidated | **Yes** | No | No | No |
| Preference of most Plaintiffs | **Yes** | No | No | No |
| Preference of Defendants[13] | **Yes** | No | No | No |
| Location of any Defendant, its witnesses, or documents | **Yes** | No | **Yes** | No |
| Pre-discovery activities underway | **Yes** | No | No | No |
| Central location for Plaintiffs, Defendants[14] | **Yes** | No | No | No |

As the chart shows, the Eastern District of Louisiana, though a well-respected, experienced district, is less well suited than the Northern District of Illinois in every way specific to these testosterone replacement therapy actions.  It has only 6 cases, it is preferred by only a

---

[13] Defendants filing this Response all prefer the Northern District of Illinois, and they are not aware of any other Defendant that prefers the Eastern District of Louisiana, the Eastern District of Pennsylvania, or the District of Colorado.

[14] The Defendants' locations stretch from Utah (the location of the Actavis subsidiary that manufactures Androderm) to New York (Pfizer) to the Midwest in-between (AbbVie, Abbott Laboratories, Eli Lilly).

few Plaintiffs and no Defendants, no Defendant is located there, and the cases have not advanced.

The Eastern District of Pennsylvania, another well-respected, experienced district, is also clearly less favorable as a transferee court for these actions. The only advantage it has in common with the Northern District of Illinois is a location of Defendants' headquarters, but the Panel should note that, significantly, ***neither*** of the two Defendants located within the Eastern District of Pennsylvania favors the it as the most appropriate venue for a testosterone replacement therapy MDL. Endo Pharmaceuticals prefers the Northern District of Illinois, and, although Auxilium Pharmaceuticals opposes an industry-wide MDL, it agrees that if there is to be one, it should be in the Northern District of Illinois.

The District of Colorado, a third well-respected, experienced district, is perhaps the least well-suited for these cases in particular. Only one case is pending in federal court there. No Defendants are located there, no Defendant prefers it, only one Plaintiff prefers it, and it is not centrally located.

It is no accident that by far the largest number of Plaintiffs have chosen the Northern District of Illinois as the venue for their cases, for it is the home of AbbVie, the maker of AndroGel, which has the leading share of the U.S. testosterone replacement market at approximately 60 percent. That is why there are so many more cases in the Northern District of Illinois than in every other district combined, and it is why they were filed earlier and they are further along. Under these circumstances, the Northern District of Illinois is the best choice for centralizing the testosterone replacement therapy cases.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Panel centralize for coordinated pretrial proceedings the cases listed in the Schedule of Actions to Judge Kennelly in the Northern District of Illinois.  A Proof of Service is attached hereto as Exhibit E.


Dated:  April 25, 2014                                    Respectfully submitted,

                                                   By: */s/ Scott P. Glauberman*
                                                        James F. Hurst
                                                        Thomas J. Frederick
                                                        Scott P. Glauberman
                                                        Bryna J. Dahlin
                                                        Nicole E. Wrigley
                                                        WINSTON & STRAWN LLP
                                                        35 West Wacker Drive
                                                        Chicago, Illinois 60601
                                                        Tel: (312) 558-5600
                                                        Fax: (312) 558-5700
                                                        sglauberman@winston.com
                                                        tfrederick@winston.com
                                                        jhurst@winston.com
                                                        bdahlin@winston.com

                                                        *Attorneys for AbbVie Inc. and Abbott*
                                                        *Laboratories*

                                                   By: */s/ David Stanley*
                                                        David Stanley
                                                        REED SMITH, LLP
                                                        355 S. Grand Avenue
                                                        Suite 2900
                                                        Los Angeles, CA 90071
                                                        dstanley@reedsmith.com

                                                        *Attorneys for Eli Lilly and Company and Lilly*
                                                        *USA LLC*

                                                   By: */s/ Andrew Solow*
                                                        Andrew Solow
                                                        Jeffrey Wagner
                                                        KAYE SCHOLER, LLP
                                                        425 Park Avenue
                                                        New York, NY 10022

17

asolow@kayescholer.com
jwagner@kayescholer.com

*Attorneys for Endo Pharmaceuticals*