**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | : | |
|---|---|---|
| | : | |
| IN RE: ANDROGEL PRODUCTS | : | MDL DOCKET NO. 2545 |
| LIABILITY LITIGATION | : | |
| | : | |
| | : | |

**OPPOSITION OF AUXILIUM PHARMACEUTICALS, INC. TO
MOTIONS FOR TRANSFER AND CONSOLIDATION UNDER 28 U.S.C. § 1407
OF ALL TESTOSTERONE REPLACEMENT THERAPY ACTIONS INTO ONE MDL**

I.     INTRODUCTION

Auxilium Pharmaceuticals, Inc. ("Auxilium") is a biopharmaceutical company located in Pennsylvania. Auxilium has an exclusive license to manufacture and distribute an FDA-approved Testosterone Replacement Therapy ("TRT") medication called Testim®, and it also sells another other FDA-approved TRT drug, Testopel®. At this time, Auxilium opposes the motions and requests for transfer filed with the Joint Panel on Multidistrict Litigation (the "Panel") insofar as they seek coordinated pretrial proceeding of all cases against all manufacturers of TRT drugs.

To date, only seven federal cases have been filed against Auxilium (three of which name Auxilium as the sole defendant). Although Auxilium does not oppose an AndroGel® MDL, it opposes an industry-wide MDL given the small number of cases pending against Auxilium. Even though all TRT cases would involve some abstract common questions, individualized issues about plaintiffs, defendants, and physicians will be more significant to liability.

Six of the seven federal lawsuits against Auxilium involve Testim® and one involves Testopel®. Auxilium is the sole defendant in three cases, and a co-defendant with AbbVie, Inc. ("AbbVie") and Abbott Laboratories, Inc. ("Abbott") in four others (one of which also includes Pfizer, Inc. ("Pfizer"), and another of which also includes Eli Lilly and Company and Lilly USA,

LLC (collectively, "Eli Lilly")).[1]  Auxilium recognizes that the cases against Abbott and AbbVie (including the cases in which Auxilium is a defendant) are likely to be transferred to a single venue for coordinated pretrial proceedings.  Auxilium agrees with AbbVie, Abbott, Eli Lilly, and Endo Pharmaceuticals that the Northern District of Illinois is the proper venue for any such MDL.[2]

## II.     PROCEDURAL BACKGROUND

### A.     Requests for Transfer and Consolidation

There have been six requests for creation of a MDL filed with the Panel involving a total of 71 cases.  The initial motion to transfer was filed on March 28, 2014 by plaintiffs in cases filed in the Northern District of Illinois against AbbVie and Abbott relating to AbbVie's AndroGel® medication (the "Illinois Plaintiffs").  (Dkt. No. 1.)  The Illinois Plaintiffs request that the Panel create a MDL of all cases related to AndroGel®, consolidated in the Northern District of Illinois before Judge Kennelly.  (Dkt. No. 1 at 1-4.)  Since that time, a number of additional motions or responses have been filed by plaintiffs requesting that the Panel create a MDL that includes *all* TRT manufacturers and their medicines, and requesting that the MDL be located in the Eastern District of Pennsylvania (Dkt. Nos. 25 & 37), the Eastern District of Louisiana (Dkt. Nos. 17, 60 & 79), or the District of Colorado (Dkt. No. 61).

### B.     Only Seven Federal Cases Have Been Filed Against Auxilium

Seven cases have been filed against Auxilium in three U.S. District Courts.  *See* List of Associated Actions, attached as Exhibit A.  There are three cases pending in the Eastern District

---

[1]     Auxilium is also a defendant in six cases pending in the Pennsylvania Court of Common Pleas, Philadelphia County, related to Testim®.  Some of these cases are brought jointly against Auxilium and GlaxoSmithKline, LLC, who agreed to co-promote Testim® to physicians between May 2012 and August 2013.

[2]     Even if the Panel were to create an industry-wide MDL, Auxilium believes the Northern District of Illinois would be the proper forum for the reasons identified by those Defendants.

of Pennsylvania, three in the Eastern District of Louisiana, and one in the Northern District of Illinois.  Six of those cases involve Testim® and one involves Testopel®.  Auxilium is a co-defendant with AbbVie and Abbott in four of the cases (and a co-defendant with Pfizer and with Eli Lilly, respectively, in one each of those four cases).  Auxilium is named as the sole defendant in three cases.  There are no allegations that Auxilium acted in concert with or is otherwise jointly and severally liable with any of the other manufacturers.

Plaintiffs in the TRT cases generally attempt to allege that they began taking testosterone therapy after seeing marketing literature, but that such materials allegedly failed to adequately advise consumers and physicians of alleged cardiovascular and/or cerebrovascular risks of such therapies.  Based on these allegations, the complaints typically include a variety of claims under state law – strict product liability and negligence claims based on failure to warn and design defect theories, as well as claims for breach of express and implied warranties, fraud, and negligent misrepresentation.

### III.    LEGAL ARGUMENTS

**A.    Legal Standard**

Under 28 U.S.C. § 1407(a), the Panel can order transfer where actions pending in different districts "involv[e] one or more common questions of fact."  Although the Panel has the power to do so, there is little reason to transfer cases held together by common questions that are not central to the parties' dispute or which otherwise will not consume a significant amount of time relative to the litigations as a whole.  *See, e.g.*, *In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d 1375, 1377 (J.P.M.L. 2010) (denying transfer despite some common factual allegations because "individual issues of causation and liability continue to appear to predominate, and remain likely to overwhelm any efficiencies that might be gained by

centralization"). Differences among manufacturer defendants and products here weigh against including the cases involving only Auxilium in any multi-district proceeding.

The Panel also examines whether transfer will be convenient for the "parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). There is no presumption in favor of transfer under section 1407, and the Panel has noted that centralization "should be the last solution after considered review of all other options." *In re Best Buy Co. Inc., California Song-Beverly Credit Card Act Litig.*, MDL Nos. 2256, 2259, 2260, 2267, 2268, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

In exercising its discretion, the Panel weighs several practical considerations. For example, transfer has been denied where there are few actions and the use of existing pretrial mechanisms would eliminate the possibility of duplicative and inconvenient discovery. *See In re Eli Lilly & Co. Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978); *see also* Manual for Complex Litig. § 20.14 (4th ed. 2004) (noting that litigants in related cases can request assignment to one judge within a district as well as cross-file deposition notices, interrogatories, and requests for production across districts). The Panel has also denied transfer where the number of actions and counsel involved were relatively limited. *See, e.g.*, *In re Trilegiant Membership Program Mktg. & Sales Pracs. Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) (denying transfer involving six actions, noting that "[t]he relatively few involved counsel also weighs against centralization, and should facilitate informal coordination and cooperation across the actions"). These factors (and others) weigh against transfer and centralization of the three cases involving only Auxilium.

B.  **The Panel Should Not Create A MDL Covering All TRT Manufacturers Where Some Manufacturers Oppose A MDL Because They Are Not Yet Involved In A Significant Number Of Cases.**

The Panel has discretion to order transfer and centralization only if, among other factors, it "will be for the convenience of the parties." 28 U.S.C. § 1407(a). This factor weighs against industry-wide transfer and centralization where, as here, some parties oppose it. *See, e.g.*, *In re Property Assessed Clean Energy (PACE) Programs Litig.*, 764 F. Supp. 2d 1345, 1347 (J.P.M.L. 2011) (denying centralization because, among other factors, "the bulk of the parties" opposed centralization).

Here, Auxilium and Actavis oppose creation of an industry-wide MDL of all TRT manufacturers because neither manufacturer is involved in more than a handful of federal cases. In light of this opposition, and the fact that movants have not demonstrated that an industry-wide MDL is convenient for all parties, the Panel should exercise its discretion to reject an industry-wide MDL at this time. The Panel may instead consider creating an AndroGel®-only MDL, given that AbbVie and Abbott do not oppose a MDL, and that the vast majority of actions involve AbbVie and Abbott as the only defendants, compared to a small number of cases against the other defendants that are far too few, standing alone, to justify MDL treatment for their products at this time. (*See* Certificate of Service filed herewith, which, as of the date of filing, lists all related actions and shows that 56 out of the 71 total related actions are brought against AbbVie and Abbott only regarding Androgel® only); *see also In re Yellow Brass Plumbing Component Prods. Liab. Litig.*, 844 F. Supp. 2d 1377, 1378-79 (J.P.M.L. 2012) (denying industry-wide centralization because "we are typically hesitant to centralize litigation against multiple, competing defendants which marketed, manufactured and sold similar products. . . . [W]e are not persuaded that centralization of these actions would serve the convenience of the parties and witnesses or further the just and efficient conduct of this litigation.").

5

Accordingly, movants' request for an industry-wide TRT MDL should be denied as such a MDL is opposed by two defendants and, in any event, the number of actions now pending against these defendants opposing a MDL would not support MDL treatment for their products.

C. **Although Abstract Common Questions Exist, They Are Not Significant To Determining Liability In Any Particular Case.**

Although there may be an abstract common issue regarding general causation, *i.e.*, whether testosterone might present cardiac and cerebral risks, specific and individualized facts regarding plaintiffs, defendants, and physicians will be more significant to any finding of liability.  Because of the narrow band of common questions of fact and the limited number of non-Abbott and non-AbbVie cases, the efficiency gains at this time will be limited such that the Panel should decline the invitation to create a MDL involving all TRT manufacturers.  *See In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, 709 F. Supp. 2d at 1377 (denying request for consolidation because individual questions about different products in "different sizes and designs, with differing" characteristics and plaintiffs with different medical histories predominated over common factual issues).

- o  First, the cases involve several different manufacturers (at least ten) and at least several different TRT medications (at least six).[3]  The medications at issue come from different manufacturers, are sold in different formulations, are applied in different ways, and – critically important given plaintiffs' allegations – have unique promotional and FDA-approval histories.[4]  Here, the several TRT drugs on the market come in different strengths and different formulations and delivery methods.

---

[3]    Although some plaintiffs assert that nine cases involve drugs in addition to AndroGel®, as of this date only the following six products have been identified in the related actions currently before the Panel:  AndroGel®, AndroDerm®, Axiron®, Depo-Testosterone®, Fortesta®, and Testim®.  (*See* Dkt. No. 17-1 at 1.)

[4]    For example, Auxilium's products are applied in different ways.  Testim® is a topical gel that is applied each morning to the shoulders and upper arms.  *See* Testim® FDA-approved Full Prescribing Information (attached as Exhibit B).  Testopel® is a pellet treatment that is placed under the skin by a physician to deliver testosterone over a longer period of time.  *See* Testopel® FDA-approved Full Prescribing Information (attached as Exhibit C).  There are differences

6

- Second, plaintiffs acknowledge that TRT manufacturers used different marketing campaigns directed to consumers that were purportedly designed to convince them that symptoms associated with normal aging were actually attributable to "Low-T." Plaintiffs in the TRT cases do not allege that Auxilium or any of the other TRT manufacturers advertised their products together, or in any way collaborated in the marketing and promotion of TRT medications. Instead, the manufacturers are competitors, each with its own promotional materials utilizing different media outlets, such as print, radio, television, or internet. And, not all manufacturers advertised through all of these forums. Each manufacturer's advertising and marketing is unique to that defendant.

- Third, for each case, the knowledge and prescribing decision(s) of each plaintiff's prescribing doctor will be critical. Applicable state laws generally provide that the duty to warn of risks associated with prescription medications runs not to the patient, but to the doctor who has sole prescribing authority.[5] Therefore, in each case it will be essential to discover the "who, what, when, where, and why" of the informational and promotional materials about Testim® and/or other TRT products that plaintiffs' doctors read and relied on.

- Fourth, plaintiffs allege that published studies establish an association between TRT products and increased levels of hematocrit, hemoglobin, and/or estradiol in the body that, in turn, increase risks of cardiac injury and stroke. The medical causation issues will necessarily be different for each plaintiff and potentially implicate differences between the various testosterone medicines.

The Panel has previously denied consolidation in cases involving different prescription products manufactured by different companies and used by different plaintiffs. For example, in *In re Shoulder Pain Pump-Chondrolysis Prods. Liab. Litig.*, 571 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008), although the Panel found that the cases had "some commonality as to whether shoulder pain pumps and/or the anesthetic drugs used in those pumps cause glenohumeral

---

among other TRT medications as well, *e.g.*, Delatestryl® and Depo-Testosterone® are injected by a doctor every two weeks. See Delatestryl®, *available at* http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=67e2cc36-a379-11dc-8314-0800200c9a66 (last visited April 25, 2014); Depo-Testosterone®, *available at* http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=cfbb53d4-b868-4a28-8436-f9112eb01c39 (last visited April 25, 2014).

[5] See generally *Bergstresser v. Bristol-Myers Squibb Co.*, No. 3:12-1464, 2013 WL 1760525, at *5 (M.D. Pa. Apr. 24, 2013) ("Where a case involves a negligent failure-to-warn regarding a pharmaceutical drug, the Pennsylvania courts have adopted the 'learned intermediary doctrine.'") (citation omitted).

chondrolysis," it denied transfer because they involved different drugs made by different pharmaceutical companies, many of whom were sued in "only a minority" of the actions.  *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, MDL 2372, 883 F. Supp. 2d 1350, 1351 (J.P.M.L. 2012) (refusing to include different products within a Watson-specific fentanyl patch MDL because "[e]ach group of cases against each manufacturer will involve unique product—and defendant-specific issues (such as the different product designs, manufacturing processes, regulatory histories, and company documents and witnesses) that will overwhelm the few common issues."); *see also In re Pfizer Inc. Mktg. & Sales Practices Litig.*, 657 F. Supp. 2d 1367, 1368 (J.P.M.L. 2009) (refusing to centralize two actions into an MDL that involved eleven different prescription drugs because the Panel was not convinced "at the present time" that centralization under Section 1407 would serve the convenience of the parties and witnesses or further the just and efficient conduct of the litigation).

Given the limited number of TRT actions that involve products other than AndroGel®, it is not apparent at this time that an all-TRT MDL would share common significant and complex issues related to any liability determinations such that it would be efficient for all involved.  *See, e.g.*, *In re Nutella Mktg. & Sales Practices Litig.*, MDL 2248, 804 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (denying unopposed motion for consolidation of two actions where the Panel was not convinced "that any common factual questions are sufficiently complex or numerous to justify Section 1407 transfer at this time"); *In re Prof'l Basketball Antitrust Litig.*, 344 F. Supp. 1405, 1406-07 (J.P.M.L. 1972) (denying transfer as "premature at this time" and denying the motion "without prejudice to the right of the parties to seek transfer at a later time" where movants did not convince the Panel as to the "existence of questions of fact common to these cases").  If additional TRT actions are filed against manufacturers of TRT medications other than

8

AndroGel®, the parties may return with a renewed request for an all-TRT MDL based upon a more developed record that would allow this Panel to more appropriately assess whether common factual issues warrant centralization.  E.g., *In re Am. Home Realty Network, Inc., Multiple Listing Serv. Copyright Infringement Litig.*, MDL 2431, 939 F. Supp. 2d 1372, 1373 (J.P.M.L. 2013) (denying transfer and noting that "[i]n the event that additional related actions are filed . . . the parties may file another Section 1407 motion, and the Panel may revisit the question of centralization at that time"). Thus, the Panel should decline the invitation to create an industry-wide MDL at this time.

## CONCLUSION

For the foregoing reasons, the Panel should deny the requests for an industry-wide MDL at the present time.

DATED:  April 25, 2014              Respectfully submitted,

/s/ James D. Pagliaro
James D. Pagliaro
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:    (215) 963-5000
Fax:    (215) 963-5001
jpagliaro@morganlewis.com

*Attorney for Defendant*
*Auxilium Pharmaceuticals, Inc.*