BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ANDROGEL (TESTOSTERONE) PRODUCTS LIABILITY LITIGATION. | MDL Docket No. 2459<br><br>**ORAL ARGUMENT REQUESTED** |

**INTERESTED PARTY RESPONSE AND MEMORANDUM OF LAW
SUPPORTING IN PART AND OPPOSING IN PART TRANSFER AND
CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407.**

**INTRODUCTION**

*A.*   *There are Two Groups of Petitions Currently Pending Before the Panel: One Group Seeks to Centralize a Clearly Defined Class of Cases Involving a Discrete Defendant (In re: AndroGel); the Second Seeks to Centralize an "All Manufacturer" MDL Involving Scores of Testosterone Products with Multiple Manufacturers (In re: Testosterone).*

There are currently two groups of petitions pending before this Court requesting centralization pursuant to 28 U.S.C. § 1407. The first group seeks to centralize a well-defined class of plaintiffs injured by one drug (AndroGel) and one set of Defendants Abbvie, Inc., and Abbott Laboratories (collectively "AbbVie"). The AndroGel litigation currently involves sixty-three (63) actions—spread out over five district courts—as well as the dominant manufacturer of testosterone products (AbbVie and Abbott) in the United States. In addition, the Petition enjoys wide-support amongst both the Plaintiffs' Bar and *the manufacturer itself* who *joined* certain Plaintiffs' efforts to consolidate all pending AndroGel cases in the Northern District of Illinois before Judge Mathew E. Kennelly. *See Order Consolidating Cases - Executive Committee Order* attached hereto as Exhibit A. These are the types of litigation this Court routinely centralizes.

Conversely, the second group of movants seeks to centralize claims involving "all testosterone manufacturers" (including a purported "personal injury class"). The petitioners seek centralization of an "All Manufacturer" MDL, irrespective of the number of cases filed; *or* even if

1

the manufacturer has a claim pending against it in federal court. To put this request in perspective, since the release of the *Finkle* study (finding a two-fold relative risk increase for cardiovascular events) and the FDA Alert on January 29, 2014, the *total* number of testosterone related cases filed against AbbVie (AndroGel) rose from zero to sixty-three (63). Conversely, the total number of cases filed against *all* other testosterone manufactures (i.e., not AbbVie) amounts to only ten (five of which are pending in the Northern District of Illinois). Worse, several testosterone manufacturers have yet to even be sued. As this Court recently noted in *In re: Intuitive Surgical, Inc., Da Vinci Robotic Surgical System Products Liability Litigation*, 883 F. Supp. 2d, 1339 (J.P.M.L. 2012), centralization of MDLs involving a small discrete number of cases are inappropriate, notwithstanding the fact the movant, "[m]aintain[s] that [the] litigation may encompass 'hundreds' of cases or 'over a thousand' cases . . . ." *See also In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Prod. Liab. Litig.*, 959 F. Supp. 2d 1375 (J.P.M.L 2013) ("*Lipitor I*") (declining to centralize case where movant predicated motion on a nominal number of cases filed in three districts). There may come a day when an "All Manufacturer" MDL is appropriate, but that day is not today.

**B.    *The Ortiz Petitioners Encourage the Panel to Grant Plaintiff Blades' In re: AndroGel Petition seeking the Northern District of Illinois, and Decline to Centralize Certain Petitioners' Request for an "All Manufacturer" (In re: Testosterone) MDL.***

Plaintiffs Eddie A. Ortiz, Mark A. George, and Dale A. Hall (collectively, the "Ortiz Petitioners")[1] submit this Interested Party Petition in Support of *William Blades', et al. Petition for Centralization* (*In re: Androgel (Testosterone) Prod. Liab. Litig.*, MDL No. 2459) to the United States District Court for the Northern District of Illinois. *See* Dkt. No. 1. As set forth in

---

[1]    The three cases are currently styled as: *Eddie A. Ortiz v. AbbVie Inc., et al.*, Civ. File No. 1:14-cv-01670 (NDIL); *Mark A. George v. AbbVie Inc., et al.*, Civ. File No. 1:14-cv-02085, (NDIL); and *Dale A. Hall. v. v. Actavis, Plc., Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Watson Laboratories, Inc., and Anda, Inc.*, Civ. File No.: 2:14-00453 (D.NV).

2

more detail herein, of the sixty-three (63) cases currently involving AndroGel, fifty-one (51 or 82.5%) are consolidated before Judge Mathew Kennelly in the Northern District of Illinois.[2] Of those fifty-one cases, the next four largest brand-name manufacturers (Lilly (Axiron), Auxilium (Testim), Endo (Fortesta) and Watson/Actavis (Andoderm)) are named in at least five additional cases pending before Judge Kennelly.[3] In other words, the largest world-wide testosterone manufacturer—whose principal place of business is in the Chicagoland area—along with four other manufacturers of testosterone products are actively litigating in the Northern District of Illinois. Because the clear nexus of this case is Illinois, the case ought to stay in Illinois.[4]

Conversely, the *Ortiz Petitioners* oppose the Petitions of all movants seeking an "All Manufacturer" MDL. *See e.g., Barrios v. AbbVie Inc.*, 14-0839 (E.D.La.) (J.P.M.L. Dkt. No. 17-1); *Albright, et al., v. AbbVie, Inc., et al.* Civ. File No. (E.D.Pa.) (J.P.M.L. Dkt. No. 25); *Santo LoCoco, et al. v. AbbVie, et al.*, Civ. File No. 2:14-cv-00774 (E.D. La.) (J.P.M.L. Dkt. No. 60); *Daniel T. Schenkein v. Abbvie, Inc, et al.*, Civ. File No. 1:14-cv-00910 (D.Co.) (J.P.M.L. Dkt. No. 61) (collectively the "*Barrios Petitioners*"). An "All Manufacturer" MDL is simply premature. As

---

[2] Both AbbVie and Abbott joined in the Motion for Consolidation. In connection with that consolidation, the parties (including counsel for Lilly (Axiron)) have conducted multiple CMCs and are in the process of negotiating the following: a) the Protective Order; b) Electronically Stored Information Preservation Protocol; c) preservation order; and d) Plaintiff's Fact Sheet. Additionally, the parties will be engaged in dispositive motion practice starting June 4, 2014.

[3] For Axiron/Lilly *see Richard Sean Ott, as the Administrator of the Estate of Richard Ott, and Richard Sean Ott, In His Own Right v. AbbVie, Inc., Abbot Laboratories, Inc., Lilly USA, Inc., and Eli Lilly and Company* (14-cv-02495); and *Frank Lau v. AbbVie, Inc., Abbot Laboratories, Inc., Lilly USA, Inc., and Eli Lilly and Company* (14-cv-01298). For Testim/Auxilium *see Loran Parker v. AbbVie, Inc., Abbot Laboratories Inc., and Auxilium, Inc.* (14-cv-02394). For Androderm/Watson *see Mickey G. Schwalm v. AbbVie, Inc., Abbot Laboratories, Inc., Actavis, Plc., Actavis, Inc., Actavis Pharma, Inc., and Watson Laboratories, Inc.* (14-cv-2899).

[4] *See generally, In re: Lipitor (Atorvastatin Calcium) Marketing, Sales Practice and Prod. Liab. Litig.*, __ F. Supp. 2d __, 2014 WL 6611589 (J.P.M.L. 2014) ( "*Lipitor II*") (transferring case to district court that held most cases and support of most plaintiffs' counsel and defendant); *In re: Stryker Rejuvenate, ABG II Hip Implant Prod. Liab. Litig.*, 949 F. Supp. 2d 1378, 1380 (J.P.M.L. 2014) (centralizing case in the, "[d]istrict, where a plurality of actions and potential tag-along actions have been filed, has the support of the common defendants . . . .").

of the date of this memorandum, there are roughly nine brand-name testosterone based products manufactured by seven different companies implicated by the "All Manufacturer" Petitions. Yet, to date, the sum and substance of *all* cases in the United States that do not involve AndroGel amount to *five* cases pending in *three* Districts. There are *zero* cases pending against at least two manufacturers and at least four products. In short, centralization is premature. And, even if centralization of an "All Manufacturer" MDL were appropriate, the case should stay in the Northern District of Illinois where five manufacturers are currently litigating and over ninety-percent of the cases are filed.

## FACTS

### A. *A General Summary of the Claims.*

The facts are set forth in the various petitions submitted to this Court. In cursory form they are as follows: Plaintiffs generally allege that Defendants manufactured testosterone-related products that resulted in serious cardiovascular related injuries including heart attacks, clotting events, strokes, and death. The products come in multiple forms, multiple strengths, and various usages depending on the individual manufacturer which include: pills, gels, roll-on applications, and injectables. Even within manufacturers that distribute multiple versions of testosterone therapy there is little consistency in their respective delivery systems. With respect to the claims themselves, like all pharmaceutical cases, they typically revolve around negligent failure to warn, negligent marketing, and strict liability. Each plaintiff, in turn, seeks recovery for physical and mental pain and suffering, as well as economic loss as a direct and proximate cause of using Defendants' products.[5]

---

[5] For a more detailed review of the facts involved in this litigation, *see generally Brief in Support of Transfer and Coordination Pursuant to 28 U.S.C. § 1407* at 1-4 (Dkt. No. 1-1).

### B. An Overview of the Current Litigation.

There are currently sixty-eight (68) claims filed in six (6) federal districts involving six of the nine brand-name testosterone products. The claims, as noted above, are predicated upon similar allegations that ingestion of testosterone resulted in adverse cardiovascular and stroke events. A superficial view of these facts would suggest centralization of "all" manufacturers in one court is appropriate. And, indeed, this Court has centralized cases predicated on far few total aggregate cases. *See e.g., In re: Propecia (Finasteride) Prod. Liab. Litig.,* 883 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012) (centralizing nine actions pending in six districts); *cf. In re: Shoulder Pain Pump-Chondrolysis Prod. Liab. Litig.,* 571 F. Supp. 2d 1367, 1368 and fn. 3 (J.P.M.L. 2008) (declining to centralize multi-manufacturer involving thirty-one (31) actions where "[m]any defendants are sued only in a minority of those actions."). However, when one evaluates the number of cases filed against the individual manufacturers, particularly on a drug-by-drug and jurisdiction-by-jurisdiction basis, it becomes clear that only one testosterone litigation — AndroGel — merits centralization *at this time*.

The current break-down on claims is as follows:

*Claims involving AndroGel—Manufacturers: AbbVie, Inc., and Abbott Laboratories*[6]

| Defendant | Number of Cases Filed | Jurisdiction |
|---|---|---|
| AbbVie/Abbott Individually | 47 | Northern District of Illinois |
| AbbVie/Abbott and Lilly (Axiron) | 2 | Northern District of Illinois |
| AbbVie/Abbott and Auxilium (Testim) | 1 | Northern District of Illinois |
| AbbVie/Abbott and Watson/Actavis (AndroDerm) | 1 | Northern District of Illinois |

---

[6] *See generally Schedule of Actions* attached hereto as Exhibit B.

| AbbVie/Abbott and Endo (Fortesta) | 1 | Northern District of Illinois |
| --- | --- | --- |
| AbbVie/Abbott Individually | 5 | Eastern District of Pennsylvania |
| AbbVie/Abbott Individually | 3 | Eastern District of Louisiana |
| AbbViee/Abbot and Auxilium (Testim) | 1 | Eastern District of Louisiana |
| AbbVie/Abbott | 1 | District of Colorado |
| AbbVie/Abbott and Watson/Actavis (AndroDerm) | 1 | Central District of California |
| Total | 63 | 5 |

In other words, of the total number of cases filed in federal district courts, sixty three (63) of the sixty-eight (68) cases involve the manufacturers of AndroGel as a named Defendant. Of those sixty-three (63), fifty-two (52 roughly 82.5%) are currently consolidated before Judge Kennelly in the Northern District of Illinois.

The numbers of case exclusively involving the non-AndroGel manufacturers pale in comparison. Specifically, the following reflects all cases that exclusively name a non-AndroGel manufacturer (i.e., the cases purporting to justify the "need" for an "All Manufacturer" MDL):

*Claims involving Testim—Manufacturer: Auxilium Pharmeuticals, Inc.*

| Auxilium Individually | 2 | Eastern District of Louisiana |
| --- | --- | --- |
| Total | 2 | 1 |

*Claims involving AndroDerm—Manufacturer: Watson Pharmaceutical and Actavis, Plc.*

| Watson/Actavis Individually | 2 | District of Nevada |
|---|---|---|
| Watson/Actavis and Pfizer, Inc., (Depo-Testosterone) Class Action | 1 | Eastern District of Pennsylvania |
| Total | 3 | 2 |

*Claims involving Axiron—Manufacturer: Lilly*: None

*Claims involving Fortesta— Manufacturer: Endo Pharmaceuticals, Inc.*: None

*Claims involving Delatestryl— Manufacturer: Endo Pharmaceuticals, Inc.*: None

*Claims involving Aveed— Manufacturer: Endo Pharmaceuticals, Inc.*: None[7]

*Claims involving Straint—Manufacturer: Actient Pharmaceuticals, LLC*: None[8]

Put another way, as of the filing of this memorandum, there are five (5) cases pending in three (3) districts outside the Northern District of Illinois that do not involve the manufacturers of AndroGel as a named Defendant. There are no cases pending against three separate manufacturers who make five different forms of testosterone supplements. It is against this backdrop the Panel should consider the competing petitions.

---

[7] One of the primary justifications the *Albright* movants advance for centralization before the Eastern District of Pennsylvania as the proper court for the "All Manufacturer" MDL is the presence of Endo Pharmaceuticals in the case. As noted above, Endo currently is involved in one (1) case seeking recovery for the use of testosterone products pending in the Northern District of Illinois. Additionally, the *Albright* movants inaccurately contend "Testopel" is manufactured by Endo. Testopel is manufactured by Slate Pharma, a company incorporated in North Carolina who received ANDA 080911 in 2007. *See* ANDA Chart attached hereto as Exhibit C. In other words, the "nexus" to Pennsylvania is predicated upon one case . . . filed in Illinois.

[8] For a complete list of testosterone brands see NDA Chart attached hereto as Exhibit D.

# ARGUMENT

I. **CENTRALIZATION OF THE ANDROGEL CASES IS APPROPRIATE; CONVERSELY, AN "ALL-MANUFACTURER" MDL IS PREMATURE AT THIS TIME AND OUGHT TO BE DENIED.**

   *A.  Centralization of the AndroGel Cases is Appropriate.*

At the discretion of the Panel, civil actions pending in different federal districts may be transferred to a centralized district. Transfer is appropriate if the Panel determines that centralization will serve "the convenience of the parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a) (2010); *see also* THE MANUAL FOR COMPLEX LITIGATION (FOURTH), § 20.131, pp. 220-221. There are sixty-three (63) AndroGel actions currently filed in five different Districts. Each advances the same basic fact pattern, the same theories of liability, and the same *singular* Defendants. This Court has centralized cases—particularly where, as here, the Defendant does not oppose centralization—based on far fewer claims. *See e.g., In re: Propecia,* 883 F. Supp.2d at 1340 (centralizing nine actions pending in six districts). Here, centralization in one federal district will promote conservation of judicial resources, avoid potential duplication of discovery, and prevent inconsistent or repetitive rulings. *See e.g., In re Janus Mut. Funds Invs. Litig.*, 310 F. Supp. 2d 1359, 1361 (M.D.L. 2004); *see also In re: Kugel Mesh Hernia Patch Prods. Liab. Litig.*, 493 F. Supp. 2d 1371, 1372 (M.D.L. 2007); *In re Fosamax Products Liab. Litig.*, 444 F. Supp. 2d 1347 (M.D.L. 2006).

The AndroGel litigation involves sixty plus cases pending before five different federal districts. Given the pace of current filings involving AndroGel, more are sure to be filed. But even if the current number of cases represented the outer-limits of the litigation, which it does not, centralization is still justified. Specifically, there are currently twenty-six (26) plaintiff's law firms representing persons injured by AndroGel spread out across the country from Los Angeles to Philadelphia. In *In re Baldwin-United Corp. Litigation*, 581 F. Supp. 739 (J.P.M.L. 1984) this

Court noted, "[i]t is most logical to assume that prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned." *Id.* at 741 (citing *In re Nissan Motor Corp. Antitrust Litig.*, 385 F. Supp. 1253, 1255 (J.P.M.L. 1974)). Given the number of cases *and* disparate counsel involved in the AndroGel cases, centralization will effectuate this goal. Accordingly, this Court ought to conclude centralization of the AndroGel cases is appropriate and grant *Blades'* Motion for Centralization.

### B. *Centralization of an "All Manufacturer" MDL is Not Warranted.*

Conversely centralization of an "All Manufacturer" MDL is not warranted. At the outset, this Court has routinely declined to centralize cases involving a nominal number of cases with a promise of future cases on the horizon. *See generally Lipitor I*, 959 F. Supp. 2d at 1376 ("Although plaintiffs suggest that the number of Lipitor cases is likely to expand considerably, we are disinclined to take into account the mere possibility of future filings in our centralization calculus."); *In re: Da Vinci Robotic*, 883 F. Supp. 2d at 1340 ("Given the minimal number of actions currently pending, the proponents of centralization have failed to convince us that any factual questions shared by these actions are sufficiently complex or numerous to justify Section 1407 transfer."); *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 466 F. Supp. 242, 243-44 (J.P.M.L. 1978) (denying transfer where "[o]nly three actions are involved"). Today, there are *five* non-AndroGel cases pending outside the Northern District of Illinois involving *three* manufactures of testosterone products in *three* district courts. Moreover, even if one were to include those cases in the Northern District naming both AndroGel and non-AndroGel manufacturers, the number of cases jumps from five to a whopping ten. Given the fact that half of the testosterone products implicated by an "All Manufacturer" MDL do not even have a case on

file, it is hard to justify the "need" for such an endeavor at this time. Simply stated, MDLs are not limitless.

Judge Battaglia recently recognized this principal in the *In re: Incretins Mimetic Products Liability Litigation*, MDL No. 2452 (S.D. Ca). In *In re: Incretins*, this Court centralized claims alleging that certain Type-II Diabetes medication (Byetta, Janumet, Januvia and Victoza) caused pancreatic cancer. *See generally In re: Incretins*, MDL No. 2452 (J.P.M.L. 2013). Sometime after transfer, certain plaintiffs filed four claims—*in the MDL*—resulting from the ingestion of a new drug (Onglyza). *See Order Striking Cases*, Civ. File. No. 3:14-cv-00285 (MDL 2452), Dkt. No. 3 attached hereto as Exhibit E. Despite the fact that the new drug was predicated upon the same molecular make-up as the others, the court declined to expand the MDL to include cases beyond the four primary products and manufacturers. *Id.* The essence of Judge Battaglia's opinion reflects one truism this Court frequently adopts: MDLs are not without limits. *See In re: Zimmer NeGen Knee Implant Prod. Liab. Litig.*, MDL 2272, Dkt. No. 275 (J.P.M.L. 2011) attached hereto as Exhibit F (vacating CTO involving "separate line of products" manufactured by Zimmer).

Here that concept is on full display and underscores why the "need" for an "All Manufacturer" MDL is premature. Specifically, there are only *five* cases pending outside the Northern District of Illinois that do not include AbbVie or Abbott as a named Defendant. Should the Panel centralize the AndgoGel cases, the opportunity for informal coordination between the non-AndroGel Defendants in Illinois and those cases pending in the other *three* Districts is real. This is not to say that someday an "All Manufacturer" MDL will make sense. But such an MDL—particularly one that involves upwards of seven defendants and nine products—cannot be predicated upon an aspirational goal that cases will somehow materialize. *See supra* at 9. The Panel must evaluate the request before it: an "All Manufacturer" MDL. Boiled down to its core—i.e., those cases without an AndroGel manufacturer—the *entirety* of the request

10

encompasses *only five* plaintiffs, *three* manufacturers, and *three* district courts. This is simply not the type of case this Court typically centralizes.

Recognizing as much, the *Barrios Petitioners* point to a lengthy string cite of this Court's decisions that purport to provide wholesale adoption of multi-manufacturer MDLs.[9] A detailed reading of these cases, however, evidences the exact opposite. Specifically, unlike here, each multi-manufacturer MDL the Panel centralized involved *scores* of cases pending across *dozens* of districts. From this perspective, these cases recognize the fundamental principal that a sufficient number of cases must exist so as to create a *real* risk of inconsistent adjudication, inefficient litigation, and impossibility of informal coordination. For example,

> *In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012) involved approximately 150 cases spread out over two dozen districts naming three principle defendants. And, even in that instance, the Panel did not create one combined MDL, but multiple individualized MDLs.
>
> *In re: Chinese-Manufactured Drywall Products Liability Litigation*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009) granted a motion for centralization involving nearly seventy actions—many of which were class actions—in "numerous" federal districts. *Id.* at fn. 1.
>
> *In re: Phenylpropanolamine (PPA) Products Liability Litigation*, 173 F. Supp. 2d 1377, fn. 1 (J.P.M.L. 2001) adopted a multi-manufacturer approach in a case involving claims spread out over twenty-two (22) different federal districts.
>
> *In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 990 F. Supp. 834, 836 (J.P.M.L. 1998), centralized a multi-defendant action involving "more than 200 federal court actions" pending in fifty-eight (58) districts. In creating the multi-manufacturer MDL, this Court expressly noted: "Moreover, the sheer size of the litigation, *coupled with its rapid growth rate* at the present time, serve to underscore the economies of scale that

---

[9] In the Cox-II Inhibitor litigation, this Court adopted a multi MDL approach despite the fact the claims involved drugs with the same molecular compound. *See generally In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005) and *In re: Bextra and Celebrex Marketing, Sales Practices and Prod. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). *In re: Bextra and Celebrex* is particularly instructive. At the time, certain movants sought to centralize the case in Louisiana (MDL 1691) where *In re: Vioxx* was currently pending before Judge Fallon. Despite the apparent efficiencies associated with assigning all "Cox II Inhibitor" to one jurist, this Court declined to do so, opting instead to centralize the case in a completely separate district.

centralized pretrial management of the federal court actions will provide." *Id.* (emphasis supplied). Comparatively speaking, since the FDA announcement on January 29, 2014, expressing concern over testosterone products, the number of non-AndroGel cases has swelled from zero to five.

*In re: Silicone Gel Breast Implants Products Liability Litigation*, 793 F. Supp. 1098 (J.P.M.L. 1992) concluded a multi-manufacturer MDL was appropriate in a case involving nearly three hundred (300) pending lawsuits in dozens of federal district courts.

Read collectively, these cases embrace the proposition that multi-manufacturer MDLs are not rubber-stamped and adopted as a matter of course. Instead, they are predicated upon a sufficient mass of cases so as to justify centralization. Wherever the line is that justifies a multi-manufacturer MDL, it is clear a case involving *five* claims, naming *three* defendants, in *three* districts where several manufacturers have yet to even be sued, is not such a case. This is not to say that MDL treatment will never be appropriate. At some point, there may be sufficient cases to justify an "All Manufacturer" MDL. Until that day, however, there is no basis to grant Petitioners' request.

## II. IRRESPECTIVE OF WHETHER THE PANEL CENTRALIZES AN MDL INVOLVING JUST ANDROGEL, OR AN "ALL MANUFACTURER" MDL, THE APPROPRIATE FORUM IS THE NORTHERN DISTRICT OF ILLINOIS.

The Northern District of Illinois is the appropriate forum to hear this case. The standard for selecting a forum is well known to this Court. *See In re: Fed. Home Loan Mortg. Corp. (Freddie Mac) Secs. Litig.*, 643 F. Supp. 2d 1378, 1380 (J.P.M.L. 2009) (transferring cases to the forum where two of the three actions were already underway and where "many of the corporate defendants and anticipated witnesses are likely located"); *see also In re Aviation Prods. Liab. Litig.*, 347 F. Supp. 1401, 1404 (J.P.M.L. 1972) (transferring cases to a forum that "provides a convenient geographical center for the litigation" and noting: "[defendant] is the one party involved in all of the transferred cases and the majority of the common discovery will focus on it. Its plant and offices are located in Indianapolis and all its documents and necessary witnesses are there."). Chicago is unquestionably a "centralized" location in the United States, equipped with

12

two airports, two hubs of major airlines, and scores of hotels within walking distance of the courthouse. Clearly, Chicago meets the minimal requirement.

> **A.** *The Northern District of Illinois is the Home of the Largest Defendant, with the Largest Market Share, Involving the Most Cases and is the best Nexus to the Litigation as a Whole.*

The fundamental reason Chicago is preferable to Philadelphia or New Orleans is because the crux of this case emanates from one Defendant—AbbVie—and one product—AndroGel. This Court has routinely expressed approval for centralizing cases in the district that is the principle place of business for the primary defendant. *See e.g., In re: Tylenol (Acetaminophen) Marketing, Sales Practice and Prod. Liab. Litig.*, 936 F. Supp. 2d 1379, 1380 (J.P.M.L. 2013) (centralizing case to jurisdiction plaintiffs' "alleged to be primarily responsible for the design, manufacture and distribution of OTC Tylenol"); *In re: Allegheny Energy Inc. Sec. Litig.*, 259 F. Supp. 2d 1368, 1369 (J.P.M.L. 2003) (same). Here, it is undeniable that the Defendants "alleged to be primarily responsible for" the tort in these cases are AbbVie and Abbott. AndroGel received FDA approval long before any of its competitors. Its market share dwarfs that of its competitors, outpacing the nearest seller by almost a billion dollars in annual sales. It is no wonder that over *ninety percent* (90%) of *all* filed cases allege the use of AndroGel in some form. In short, *the* primary Defendants in this case are from Chicago, developed the drug in Chicago, and implemented their scheme to sell it in Chicago without a proper warning. And, given the vast majority of cases in this case will be AndroGel cases, the best (and perhaps only) jurisdiction to avoid a massive *Lexecon* conflict is the Northern District of Illinois. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

All other jurisdictions pale in comparison. At the outset, the Eastern District of Louisiana has virtually no nexus to the underlying misconduct beyond the four (4) cases that are currently filed in New Orleans. No Defendant maintains *any* meaningful business presence in Louisiana. No

Defendant manufactures any product in Louisiana. No Defendant maintains any witnesses, documents, or evidence in Louisiana. As a result, the specter of *Lexecon* looms large over any MDL emanating out of the Eastern District of Louisiana. And, while there is no doubt that Louisiana is comprised of several fine jurists, there is little doubt Judge Kennelly (in the Northern District) is equally up to the task. In fact, Judge Kennelly, unlike any other jurist currently handling testosterone cases, has demonstrated a willingness to work the case in an efficient manner. Specifically, to date, Judge Kennelly has held multiple CMCs, ordered the parties to commence negotiations over preliminary procedural motions, *and* set a date for Defendants' Motions to Dismiss (June 4, 2014).[10] He is clearly capable of overseeing these cases.

The Eastern District of Pennsylvania fairs no better. Recognizing that the Northern District of Illinois is the home of the single biggest testosterone manufacturer, the *Albright* movants endeavor to create the appearance that the bulk of all testosterone manufactures reside in or around the tri-state area. *See Albright Motion for Transfer and Coordination*, at 5-6, Dkt. No. 25 ("*Albright Motion*"). While long on rhetoric, the *Albright* movants are short on facts. Specifically, the following are the actual facts associated with the East Coast Defendants:

1. To date, the *only* claim pending against Endo Pharmaceuticals is pending in the Northern District of Illinois in a combined Fortesta/AndroGel claim. *See Schedule of Actions* attached hereto as Exhibit B. *None* of the other products manufactured by Endo are named in *any* suit in the nation.

2. Testopel is not manufactured by Endo, as the *Albright* movants contend. *Albright Motion* at 6. Testopel is manufactured by Slate Pharma, a company incorporated in North Carolina who received ANDA 080911 in 2007. *See* ANDA Chart attached hereto as Exhibit C.

3. Pfizer, who manufacturers Depo-Testosterone is named in one case.

4. Finally, Actavis is named in two cases in Nevada, one in the Northern District of Illinois, and one in the Eastern District of Pennsylvania. The problem is that AndroDerm was developed and manufactured by Watson . . . in Nevada. In other

---

[10] *See Pre-Trial Order No. 2*, Case No. 17-C-1748, Dkt. No. 31 attached hereto as Exhibit G.

words, the witnesses, documents, and relevant materials likely reside in Nevada—not Pennsylvania.

In short, the "nexus" to Pennsylvania is predicated upon one case against Endo currently filed in Illinois, four cases involving a company whose principal place of business was Nevada (Watson), and one case against Pfizer (a New York company). Comparatively, sixty-three (63) cases representing ninety plus percent of the cases on file involve AndroGel in one way or another. And, of those, 53 or 82.5% are currently filed in the Northern District of Illinois.

### B. *The Bulk of the Cases and Counsel Are Cooperatively Working In the Northern District.*

This Court has long recognized that, "[p]rudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned." *In re Baldwin-United Corp. Litig.*, 581 F. Supp. at 741. Additionally, in several recent cases, this Court centralized cases predicated in large part on the district that held the greatest number of case. *See generally Lipitor II*, 2014 WL 6611589 at * 3 (transferring cases to the district court that held the most cases and was supported by most plaintiffs' counsel and defendant); *In re: Stryker*, 949 F. Supp. 2d at 1380 (centralizing cases in the, "[d]istrict, where a plurality of actions and potential tag-along actions have been filed, [and] has the support of the common defendants . . . ."); *In re: Tylenol*, 936 F. Supp. 2d at 1380 (consolidating litigation in district with twenty-one of twenty seven filed cases). Read collectively, centralization is appropriate in the district that represents the largest number of active cases and where the parties are collectively working to advance the litigation. This is precisely the case in Northern District of Illinois.

To date, no less that twenty-one (21) law firms from through the Country have filed claims in the Northern District of Illinois. Many, if not all, of those Parties endorsed the Plaintiffs' Joint

Status Report submitted to Judge Kennelly in connection with the initial CMC. In short, the parties are cooperatively working together—absent a formal leadership structure—to prosecute the litigation. Additionally, AbbVie, Abbott, and Lilly consented to the consolidation of testosterone cases before Judge Kennelly; a position they will likely replicate before this Panel. Finally, fifty-two (52) of the sixty-three (63) AndroGel cases currently on file (roughly 82.5%) are pending in the Northern District of Illinois. Put another way, the overwhelming consensus amongst plaintiffs' lawyers, defense lawyers and the parties is that this case ought to be litigated in the Northern District of Illinois. Accordingly, irrespective of whether this Court centralizes just the AndroGel cases or an "All Manufacturer" MDL, the case ought to be centralized in the Northern District of Illinois.

## CONCLUSION

For the reasons set forth herein, the *Ortiz Petitioners* respectfully request, pursuant to 28 U.S.C. § 1407, that the Panel enter an Order Granting the *Blades' Petition for Centralization (In re: AndroGel)* and Declining the *Barrios Petitioners' Petitions* for an "All Manufacturer" MDL. The *Ortiz Plaintiffs* further urge the Panel transfer the AndroGel cases to Judge Mathew Kennelly, District Court Judge for the United States District Court for the Northern District of Illinois for coordinated and consolidated pretrial proceedings.

Dated: April 25, 2014

Respectfully Submitted,

*/s/ Timothy J. Becker*
Timothy J. Becker (MN #256663)
Johnson Becker, PLLC
33 South 6th Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 436-1800
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com

Counsel for Plaintiffs